326 So.2d 340 (1976)
STATE of Louisiana
v.
Alvin DANIELS.
No. 56744.
Supreme Court of Louisiana.
January 19, 1976.
Rehearing Denied February 20, 1976.
*341 Bernard S. Dolbear, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., Joseph H. Simpson, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Alvin Daniels was convicted after a trial by jury for the armed robbery of Flo Bankston. After trial and a unanimous guilty verdict, he was sentenced to be imprisoned at hard labor for thirty years without benefit of parole, probation or suspension of sentence. On this appeal he relies upon three assignments of error for reversal of his conviction and sentence.

Assignment of Error No. 1
At 7:59 on the morning of February 3, 1975, Flo Bankston reported to the Sheriff's department that she had been robbed at her grocery store located approximately three miles east of the town of Arcola in Tangipahoa Parish. The robber was carrying a lunch pail from which he drew a snubnosed handgun during the course of the robbery. He escaped and was apprehended a week later. Flo Bankston was asked to attend a line-up at the courthouse on February 18, 1975. At that time she was told that she was to see if the robber was in the group. She was shown into the line-up and immediately identified Alvin Daniels as the robber. The public defender *342 had been appointed to represent the defendant and was present at the line-up.
Prior to trial, defense counsel filed a motion to suppress evidence of the line-up identification, alleging that the line-up was conducted in an unconstitutionally suggestive manner because it was not composed of individuals with sufficiently similar physical characteristics and because Flo Bankston was subjected to "impermissible suggestions."
A hearing was held on the motion to suppress. No evidence was produced by the defense to support the motion. After the State established the circumstances surrounding the line-up, including the introduction of a photograph of the line-up, the motion to suppress was denied and this assignment of error was reserved.
Part of the defense contention that the line-up was impermissibly suggestive is based upon one answer by the victim Flo Bankston to a question propounded by defense counsel at the hearing on the motion to suppress:
"Q. Now, do you remember exactly what was told to you when you were asked to come to that lineup?
A. They told me that there would be a line-up of six men and that I would pick him out of that six. Wouldn't have any trouble doing it."
This argument, however, disregards the explanation of this testimony immediately following in which defense counsel asked, "And you were told that he would be one of the six men?" Flo Bankston answered: "They said (sic) was going to be a line-up and See if he is in that group and that is what I did." (emphasis added).
Taken as a whole, Flo Bankston's testimony makes it clear that she was not subjected to "impermissible suggestions." As explained, her testimony is to the effect that she was told by the officer conducting the line-up that she was to see if the person who robbed her was in the group of six men composing the line-up. This she did.
The contention that the persons composing the line-up were physically dissimilar is also without merit. Travis Dykes, the deputy sheriff who arranged the line-up, testified that he made every effort to include people with similar builds, similar complexions and different hair styles. Raymond Carr assisted in picking out the men for the line-up. A photograph of the line-up in the record satisfactorily demonstrates that there was no deliberate effort to select persons with marked dissimilarities to suggest the identity of the defendant. Four of the men are of almost identical height. Defendant is one of these. Two others are taller. They are all generally of the same complexion and build. None were dressed like the robber at the time of the robbery.
Understandably, it is impracticable to accomplish strict similarity in these line-ups. Sufficient similarity is demonstrated to negative a conclusion that the line-up was deliberately designed to suggest the defendant's identity.
Although the issue was not raised by the motion to suppress the line-up identification, defense counsel argues, for the first time in brief, that the prosecution did not establish that probable cause existed to place defendant Alvin Daniels in jail and subject him to a line-up. This lack of probable cause to arrest, it is contended, vitiates the entire line-up identification proceeding.
The claimed irregularity or error in the proceeding cannot be availed of, for it was not alleged in the motion to suppress or otherwise urged before the trial judge who was, therefore, not given an opportunity to rule on the issue. La.Code Crim.Proc. arts. 841, 844, 920.
In any event, the reference to the line-up identification procedure at the trial in June 1975 deprives the defendant of no constitutional or statutory right. Applying the tests outlined by the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, *343 (1967), we are of the opinion Flo Bankston's courtroom identification was based upon observations and knowledge gained by her independently of the line-up.
Identification was based principally upon the prior opportunity to observe the criminal act as it occurred, not the line-up identification. She was in close proximity to the defendant (over the counter) and observed him for some time as he shopped around the store; there was no discrepancy between her pre-line-up description and defendant's actual description; she made no identification prior to line-up of another person; there was no identification of the defendant by picture prior to the lineup; there was no failure of Flo Bankston to identify the defendant on a prior occasion; and there was no appreciable lapse of time between the alleged act and the line-up identification. State v. Allen, 251 La. 237, 203 So.2d 705 (1967).

Assignment of Error No. 2
Louis Little, Carl Johnson and David Alford were called as witnesses by the State. Little testified that on the morning of the robbery shortly before eight o'clock when he passed Flo Bankston's store on his way to Amite, he saw a "colored fellow" coming out of the store carrying a pail, a lunch kit. He was within fifteen feet of him as he passed and got a good look at him. He pointed out the defendant in the courtroom as the person he saw coming out of the Bankston grocery store on that occasion. Defense counsel objected that the identification had been made without a predicate having been established by the State. His objection was overruled.
Carl Johnson testified that he operated a Texaco Service station about two blocks from Flo Bankston's store. He pointed to Daniels in court as the person who drove into his station about 7:30 on the morning of the robbery and got a dollar's worth of gas. Defense counsel again objected to the in-court identification, arguing that the testimony was not admissible unless the State established a predicate for the identification. His objection was again overruled.
David Alford is a State Juvenile Probation and Parole Officer who lives less than half a block from the Bankston store. He was walking by the store about five minutes to eight on the morning of the robbery. He noticed there were no cars at the store and observed someone walking down the ditch "a black male, rather large build, and he had on a greenlooked like a green, olive drab fatigue jacket on, lunch pail in his hand and sunshades." When he was asked in court whether he could identify the person he saw that morning, he replied: "To be honest, I cannot, sir. The man sitting rightup here fits the general description of the man I saw walking." To this testimony there was no defense objection.
As we understand the defense argument, the in-court identifications by Little and Johnson violate all principles of fair trial. It is asserted that the witnesses could not help but identify the defendant in court (presumably because he sat at the defense counsel's side). Further, he argues, a proper predicate would require introduction into evidence of the weapon used by the robber, the checks, etc. Permitting this identification, he contends, deprives him of due process. It is also contended that an in-court identification should not be allowed unless the witness has previously identified the defendant in a line-up.
A defendant, who is undoubtedly a principal participant in a criminal trial, is required to be present and is conspicuously seated at his counsel's table to assist in his defense. This does suggest, by his presence in court, that he is the defendant. But this circumstance does not indicate or unduly suggest to the witness, that defendant committed the crime, only that he is charged with its commission. Although the defendant's presence in court is a factor to be considered by the jury in weighing the testimony of in-court identification, *344 the testimony is not inadmissible for these reasons.
Defendant had the right, and exercised it thoroughly, to cross-examine the witnesses on their identification testimony, and we have held that he did not have the right to demand a line-up prior to an incourt identification. State v. Brooks, 294 So.2d 503 (La.1974).
This assignment has no merit.

Assignment of Error No. 3
In this assignment, defendant seeks review of the refusal of the trial judge to sustain his motion for a directed verdict. As our treatment of this case demonstrates, there was abundant evidence to support conviction, and, therefore, this assignment is without merit. Only a total lack of evidence of the crime or some essential element thereof will support a directed verdict. State v. Douglas, 278 So.2d 485 (La.1973).
For the reasons assigned, the conviction and sentence are affirmed.