360 So.2d 500 (1978)
STATE of Louisiana
v.
Steven Jerome DREW.
No. 61121.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied July 3, 1978.
*505 Steven H. Beadles, Michael W. Beam, Bossier City, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Lawrence M. Johnson, Donald C. Brown, Abbott J. Reeves, Asst. Dist. Attys., Research and Appeals, for plaintiff-appellee.
MARCUS, Justice.
Steven Jerome Drew was indicted by the grand jury for an aggravated rape allegedly committed on October 18, 1976, in violation of La.R.S. 14:42 (1975). After trial by jury, defendant was found guilty as *506 charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt; and the jury unanimously recommended a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The trial court sentenced defendant in accordance with the recommendation of the jury. On appeal, defendant relies upon fifty assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENTS OF ERROR NOS. 1 AND 49
Defendant contends the trial court erred in denying his motion to quash the indictment and motion in arrest of judgment. He argues that the statute under which he was indicted and convicted, La.R.S. 14:42 (1975), has no valid penalty provision and is unconstitutionally vague and overbroad.
La.R.S. 14:42 (1975) provided:
Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force;
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution;
(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by death.
La.Code Crim.P. art. 905.6, one of the statutes under which defendant's sentence was determined, provides:
A sentence of death shall be imposed only upon the unanimous recommendation of the jury. If the jury unanimously finds the sentence of death inappropriate, it shall recommend a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
First, we address the issue concerning the invalidity of the penalty provision of La. R.S. 14:42 (1975). After the instant trial on the merits and sentencing hearing before the same jury that determined the issue of guilt, but prior to imposition of that sentence by the trial court, the United States Supreme Court rendered a decision in Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). In Coker, the Supreme Court reviewed a death sentence imposed for aggravated rape of an adult woman and "concluded that a sentence of death is grossly disproportionate and excessive punishment for the crime of rape and is therefore forbidden by the Eighth Amendment [to the United States Constitution] as cruel and unusual punishment." (Footnote omitted.) Code Ga. § 26-2001 (1972), the statute under which Coker was convicted provides for alternative penalties to the death sentence. Coker's punishment was determined by a jury in a separate sentencing proceeding under Ga.Code Ann. § 26-3102 (1976 Supp.), which is very similar to the bifurcated procedure provided under La. Code Crim.P. arts. 905, et seq., under which the instant defendant was sentenced. The Court in Coker limited its grant of certiorari only to the issue of constitutionality of the death penalty in that case, found the sentence unconstitutional, and remanded the case to the Georgia Supreme Court for further proceedings. The Georgia Supreme Court in turn remanded the case to the Georgia trial court for resentencing. Coker v. State, 239 Ga. 408, 238 S.E.2d 690 (1977). Coker's conviction for aggravated rape was not overturned; only his death sentence was vacated.
In the instant case, defendant was not sentenced to death but contends that, under Coker, his conviction should be vacated. He argues that the nullity of the death penalty provision of La.R.S. 14:42 (1975) renders the entire statute invalid, as well as the bifurcated *507 procedure set forth in La.Code Crim.P. arts. 905, et seq., as applied to aggravated rape cases. He argues that the articles providing for the bifurcated procedure would not have been enacted for aggravated rape cases unless the death penalty were available for such convictions. Alternatively, he argues that the proper sentence in the instant case is the sentence provided in La.R.S. 14:43 for simple rape, or, in the further alternative, the sentence provided in La.R.S. 14:27 for attempt of a crime punishable by death or life imprisonment. We find no merit to these arguments.
In Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the United States Supreme Court held unconstitutional Louisiana's mandatory death sentence for first degree murder. In accordance with that decision, this court affirmed convictions in first degree murder cases presenting no otherwise reversible error, but vacated the death sentences and remanded the cases to the trial court for resentencing of the accuseds to the most severe valid penalty established by the legislature for criminal homicide at the time of the offense. See State v. Sheppard, 350 So.2d 615 (La. 1977); State v. Williams, 343 So.2d 1026 (La.), Cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); State v. Jenkins, 340 So.2d 157 (La.1976).
In Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the United States Supreme Court declared unconstitutional Louisiana's mandatory death penalty for aggravated rape. Since Selman, in cases where defendants have been convicted of aggravated rape and sentenced to death, this court under the mandate of Selman has set aside and vacated the death sentences but, finding no reversible error, has affirmed the convictions. These cases were remanded to the trial court for resentencing of defendants to the most serious penalty for a lesser included offense at the time of commission of the crime. See State v. Craig, 340 So.2d 191 (La.1976); State v. Lee, 340 So.2d 180 (La.1976); State v. Sledge, 340 So.2d 205 (La.1976).
However, in the instant case, La.R.S. 14:42 (1975) and La.Code Crim.P. art. 905.6 provide for alternative penalties, death or life imprisonment without benefit of probation, parole or suspension of sentence. The instant situation is thus analagous to those of many cases reviewed by this court after the United States Supreme Court decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In Furman, the Supreme Court invalidated the death sentence provided by a Georgia statute and imposed similarly to the death penalty provided by the then effective La.R.S. 14:42 (1950). Also effective at that time was La.Code Crim.P. art. 817 (1966), which allowed a jury in a capital case to "qualify its verdict of guilty with the addition of the words `without capital punishment,' in which case the punishment [was to be] imprisonment at hard labor for life." Hence, the effect of these two provisions was to give the jury a choice in sentencing between death and life imprisonment, as in the instant case under La.R.S. 14:42 (1975) and La.Code Crim.P. art. 905.6. Upon review of such post-Furman cases, this court affirmed convictions presenting no otherwise reversible error and remanded the cases to the trial court for resentencing of the accuseds to life imprisonment, the alternative sentence provided by La.Code Crim.P. art. 817 (1966). See, e. g., State v. Baker, 288 So.2d 52 (La.1973); State v. Richmond, 284 So.2d 317 (La.1973); State v. Refuge, 270 So.2d 842 (La.1972); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
Under the rationale of these cases, we find that the invalidity of the death penalty provision of La.R.S. 14:42 (1975) does not render invalid that entire statute and La.Code Crim.P. arts. 905, et seq., as applied to the instant aggravated rape case. We further find that the proper sentence in the instant case is life imprisonment without benefit of probation, parole or suspension of sentence,[2] the alternate sentence *508 provided by La.Code Crim.P. art. 905.6. Since defendant was not sentenced to death, but was in fact sentenced to life imprisonment without benefit of probation, parole or suspension of sentence, no resentencing is necessary.
We likewise find no merit to defendant's contention that La.R.S. 14:42 (1975) is unconstitutionally vague and overbroad. He argues that the law is ambiguous because there is virtually no difference between the elements of the crime of forcible rape (La.R.S. 14:43.1) and the crime of aggravated rape with which he was charged. This argument was previously rejected by this court in State v. Fletcher, 341 So.2d 340 (La.1976):
[La.R.S. 14:43.1] merely created a lesser degree of the crime, permitting a responsive verdict, La.C.Cr.P. art. 814, subd. A(8) (as amended in 1975), to the charge of aggravated rape, La.R.S. 14:42. It does not, as defendant contends, repeal or make ambiguous the more serious offense of aggravated rape defined by Subsection (2) of the latter statute punishing sexual intercourse without the lawful consent of the female since committed `Where [she] is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.'1 (Footnote omitted.)
We adhere to this decision.
For the reasons assigned, we find the trial court did not err in denying defendant's motion to quash the indictment and motion in arrest of judgment.
Assignments of Error Nos. 1 and 49 are without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends the trial judge erred in not requiring the state to disclose and produce all tangible items it intended to introduce in evidence, any tests made upon such items, and the results thereof in response to his motion for a bill of particulars and motion to produce.
It has been held that the defense is not entitled to pretrial discovery of descriptions of physical objects, results of tests made thereon, and the objects themselves except in certain limited exceptions are not present here. State v. Thornton, 351 So.2d 480 (La. 1977); State v. Ball, 328 So.2d 81 (La.1976); State v. White, 321 So.2d 491 (La.1975); State v. Collins, 308 So.2d 263 (La.1975). La. Acts 1977, No. 515, providing for more liberal discovery in criminal cases, was not in effect at the time of filing of the motions herein and rulings thereon. Hence, this statute has no possible application here. The trial judge did not err in not compelling the state to disclose and produce the information and physical evidence requested prior to trial.
Assignments of Error Nos. 2 and 3 are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in denying his motion to suppress physical evidence. He argues that the evidence was recovered as a result of an unconstitutional search of an automobile and illegal arrests of one Ira Lee Loyd and defendant. Therefore, the evidence was inadmissible as "fruit of the poison tree."
At a pretrial suppression hearing, four police officers testified concerning the search of the automobile and arrests of Loyd and defendant. Their testimony reflects the following circumstances surrounding the search and arrests.
About 1:00 a. m., October 19, 1976, Officers Murphy and May in one police vehicle and Officers Lott and Foster in another received a radio broadcast concerning a complaint of a disturbance in Bossier City. The complaint had been made by an offduty police officer, residing in the vicinity, who told the police that two black males had been causing the disturbance in connection with an automobile stuck in a ditch. Upon arrival at the scene of the disturbance, *509 the officers found an automobile situated partially in a ditch and partially in the road; the two black males were not present. The complainant informed the officers of the direction in which the two black males had left the scene on foot. The officers ran a check of the automobile's license number and found that the license was registered for a different vehicle. They then ran a check on the vehicle identification number and received information that the automobile had been reported stolen from Shreveport the previous day. Officers Lott and Foster then left the scene in search of the suspects, following the directions given by the complainant. Officers Murphy and May looked inside the car and saw a wallet on the rear seat. The wallet contained a social security card bearing Ira Lee Loyd's name. This information was relayed by radio to Officers Lott and Foster, who, shortly thereafter, saw two black males on foot about one-half mile from the scene of the disturbance. Officers Murphy and May joined the others. The officers asked the suspects their names; one identified himself as Ira Lee Loyd, and the other was defendant. Loyd and defendant were then advised of their Miranda rights and arrested for automobile theft. Subsequently, evidence related to the instant offense was seized from the persons of the two suspects and was found in the vicinity of their apprehension.
Defendant asserts standing to contest the search of the vehicle under La.Const. art. 1, § 5. He argues that the search of the automobile was unconstitutional, requiring suppression of the wallet and social security card. He then argues that the trial court could not properly consider the inadmissible wallet and information obtained therefrom in determining probable cause to arrest Loyd and defendant; and, hence, without this information, probable cause did not exist for the arrests. Defendant further argues that no probable cause existed for the arrests even if the information obtained from the wallet may properly be considered. He thereby reasons that the physical evidence subsequently recovered as a result of the unconstitutional search and illegal arrests was inadmissible as "fruit of the poison tree."
La.Const. art. 1, § 5, provides in pertinent part:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. (Emphasis supplied.)
Even assuming arguendo that defendant has standing to contest the search of the vehicle, there is no merit to his contention. Prior to searching the automobile, the police officers had received reliable information that the license plate on the car was registered for a different vehicle and that the car had been reported stolen. The automobile was stuck in a ditch, partially blocking the road. The officers were justified in taking possession of the vehicle and making at least a generalized search of its interior in order to secure information which might lead to the identification of the thief. The wallet was found on the rear seat of the automobile during such a search. Under the circumstances, we find that the search of the vehicle was reasonable; the trial judge properly considered the information thereby obtained in assessing probable cause to arrest Loyd and defendant.
We further find that probable cause existed for the arrests.
La.Code Crim.P. art. 215.1 A provides:
A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and explanation of his actions. (Emphasis supplied.)
La.Code Crim.P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Robinson, 342 So.2d 183 (La.1977); State v. Perique, *510 340 So.2d 1369 (La.1976); State v. Dixon, 337 So.2d 1165 (La.1976); State v. Cook, 332 So.2d 760 (La.1976); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973). We have held that reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from government interference. State v. Robinson, supra; State v. Perique, supra; State v. Dixon, supra; State v. Cook, supra; State v. Weathers, 320 So.2d 892 (La.1975).
La.Code Crim.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
. . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. . . .
Reasonable cause, which we have treated under this article as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Robertson, No. 60,909, 358 So.2d 931 (La., April 10, 1978); State v. Williams, 349 So.2d 286 (La.1977); State v. Robinson, supra; State v. Marks, 337 So.2d 1177 (La. 1976). Probable cause may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Robertson, supra; State v. Williams, supra; State v. Robinson, supra; State v. Marks, supra; State v. Sarrazin, 291 So.2d 393 (La. 1974). Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Robertson, supra; State v. Williams, supra; State v. Robinson, supra; State v. Marks, supra; State v. Warren, 283 So.2d 740 (La.1973).
In the instant case, the officers were informed by the complainant that two black males had abandoned the vehicle and left the scene of the disturbance on foot. The officers knew that the license plate on the vehicle had been switched and that the vehicle was stolen. Upon seeing two black males on foot shortly thereafter in the vicinity, the officers had reasonable cause sufficient to detain the men for the purpose of asking their names. La.Code Crim.P. art. 215.1 A. The officers knew that Ira Lee Loyd's wallet had been found in the stolen automobile. Once Loyd identified himself, the facts and circumstances known to the arresting officers and of which they had reasonably trustworthy information were sufficient to justify their belief that Loyd and his companion (defendant) had committed a crime (automobile theft). Hence, probable cause existed for the arrests. La.Code Crim.P. art. 213.
Having found that the search of the vehicle and the arrests were validly made, the evidence subsequently seized from the persons of Loyd and defendant and found in the vicinity of their apprehension was admissible. It was not "fruit of the poison tree." Hence, the trial judge did not err in denying defendant's motion to suppress the evidence.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial court erred in admitting hearsay testimony at the suppression hearing concerning a police radio broadcast that an automobile had been reported stolen.
First, no objection was made to this testimony at the hearing. In the absence of a contemporaneous objection, an alleged irregularity or error cannot be availed of *511 after verdict. La.Code Crim.P. art. 841; State v. Robertson, No. 60,909, 358 So.2d 931 (La., April 10, 1978); State v. Williams, 343 So.2d 1026 (La.), cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975).
In any event, a well-settled rule is that evidence is nonhearsay which is offered not to prove the truth of the facts recited, but to prove that the utterances occurred. State v. Mitchell, 356 So.2d 974 (La.1978); State v. Cass, 356 So.2d 936 (La. 1977); State v. Williams, 341 So.2d 370 (La. 1976); State v. Monk, 315 So.2d 727 (La. 1975); State v. White, 301 So.2d 321 (La. 1974). In the instant case, the testimony concerning the radio broadcast that an automobile had been reported stolen was offered to show probable cause for an initial arrest of defendant for automobile theft and to prove only that such a report had been made, thereby prompting the officers to arrest defendant. It was not offered to prove the truth of the report. Hence, the trial court did not err in admitting the testimony in evidence at the pretrial suppression hearing.
Assignment of Error No. 5 is without merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 7
Defendant contends the trial judge erred in sustaining the state's objection to his examination of prospective juror Hayes on voir dire concerning his opposition to the death penalty (Assignment of Error No. 6) and in restricting his voir dire examination of prospective jurors by prohibiting him from posing a certain hypothetical question (Assignment of Error No. 7).
First, the record reveals that defendant's challenge for cause of prospective juror Hayes was sustained by the trial judge. Hence, the issue raised by Assignment of Error No. 6 is moot.
Further, we find no merit to Assignment of Error No. 7. After examining prospective juror Harris on voir dire relative to his sentiments concerning the imposition of the death penalty, the state challenged the juror for cause. Prior to ruling on the challenge by the trial judge, defendant asked the juror whether he would consider imposing the death penalty if a life were in fact taken during the aggravated rape. The juror answered in the affirmative. Defendant then objected to the state's challenge for cause. He argued that the hypothetical question assuming a life was taken during the aggravated rape was relevant for the purpose of determining whether the prospective juror could impose the death penalty under certain circumstances. The state objected to the use of the hypothetical question on the ground that no life was in fact taken in the instant case. The trial judge sustained the state's objection, which ruling is the subject of this assignment of error.
The ruling of the trial judge was correct. While defendant should be afforded wide latitude on voir dire in a capital case to explore a prospective juror's sentiments relative to the death penalty, we do not consider that it was proper for defendant to have assumed a fact (i. e., a life was taken during the aggravated rape) in his hypothetical question, which was not true in the instant case.
In any event, the hypothetical question which defendant wished to ask prospective jurors was obviously intended to aid in selecting a jury which, if it found defendant guilty of aggravated rape, would not recommend the death penalty. Since the jury actually selected did not recommend the death penalty, defendant was not prejudiced by the trial court's prohibition against the use of the hypothetical question in examining prospective jurors.
Assignments of Error Nos. 6 and 7 are without merit.

ASSIGNMENTS OF ERROR NOS. 8, 9, 10, 11, 12, 14, 15, 16, 18 AND 19
Defendant contends the trial judge erred when he sustained the state's challenges for cause of ten prospective jurors based on *512 their sentiments regarding the death penalty.
At the outset, we note that in Assignment of Error No. 9, defendant contends that the state challenged juror Hayes for cause. The record, however, reflects that defendant, not the state, challenged this juror for cause and that the challenge was sustained. Hence, this assignment of error is without merit.
We also find that the state's challenges for cause of the other nine jurors were properly allowed by the trial judge. La. Code Crim.P. art. 798 provides in pertinent part:
It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
. . . . .
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt . . . .
This article was amended to conform with the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), wherein the United States Supreme Court held that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected." (Footnote omitted.) On the other hand, the Court found no constitutional bar to excluding jurors who stated in advance of trial that they could not even consider returning a verdict of death or that their attitude about the death penalty would prevent them from making an impartial decision as to defendant's guilt.
After carefully examining the record on voir dire examination, we are satisfied that each of the nine jurors, after questioning by both the state and defendant, were properly excused in strict compliance with the standards set out in Witherspoon and La.Code Crim.P. art. 798(2). The responses made by these prospective jurors clearly indicated that, because of their conscientious scruples against the infliction of capital punishment, they would automatically vote against the imposition of capital punishment without regard to any evidence that might have developed in the trial on the issue of guilt, or at the sentencing hearing in the event of conviction, or that their attitudes toward the death penalty would prevent them from making an impartial decision as to defendant's guilt.
Moreover, the jury did not recommend and the trial court did not impose the death penalty. Defendant does not have a valid complaint of a Witherspoon violation. State v. James, 339 So.2d 741 (La.1976); State v. Rester, 309 So.2d 321 (La.1975); State v. Adams, 302 So.2d 599 (La. 1974); State v. Fallon, 290 So.2d 273 (La.1974). Further, the death penalty provision of La. R.S. 14:42 (1975) is no longer valid. See Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). We have uniformly held that a defendant insulated from the death penalty has no valid Witherspoon complaint. State v. Mitchell, 356 So.2d 974 (La.1978); State v. Ross, 343 So.2d 722 (La.1977); State v. Hunter, 340 So.2d 226 (La.1976); State v. Miles, 339 So.2d 735 (La.1976).
Assignments of Error Nos. 8, 9, 10, 11, 12, 14, 15, 16, 18 and 19 are without merit.

ASSIGNMENT OF ERROR NO. 17
Defendant contends the trial judge erred in denying his motion for a mistrial made during the voir dire examination of a prospective juror who made a prejudicial remark in the presence of prospective jurors.
One of the prospective jurors was a former police officer. The state asked him if *513 his former employment would render him incapable of being a fair and impartial juror. He replied, "Well, as far as I see, there's some doubt in my mind as to whether or not [defendant] is guilty. If he wasn't guilty, he wouldn't be up here." Defendant challenged the juror for cause and moved for a mistrial. The trial judge granted the challenge for cause, but denied the motion for a mistrial. He immediately admonished the jurors to disregard the remark.
Voir dire examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. State v. Hutto, 349 So.2d 318 (La.1977); State v. Ford, 349 So.2d 300 (La.1977); State v. Sheppard, 263 La. 379, 268 So.2d 590 (1972). The question propounded by the state to the prospective juror in the instant case was designed to determine any potential adverse influence on his ability to render an impartial verdict. Although the prospective juror's response provided a justifiable basis for the exercise of a challenge for cause, it did not warrant the declaration of a mistrial. Mistrial is a drastic remedy to be sparingly granted and is only authorized in specified instances where unnecessary prejudice results to an accused. State v. Hutto, supra; State v. Governor, 331 So.2d 443 (La.1976); State v. Sylvester, 298 So.2d 807 (La.1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972). The trial judge immediately admonished the prospective jurors to disregard the remark. No showing was made that the response of the excused juror to the state's inquiry affected the other jurors. Nor do we find that any undue prejudice resulted therefrom. We consider that the prospective juror's response was an unsolicited answer to the state's question directed toward discovering the ability of the juror to render a fair and impartial verdict. Therefore, the trial judge did not err in denying defendant's motion for a mistrial.
Assignment of Error No. 17 is without merit.

ASSIGNMENTS OF ERROR NOS. 20 AND 21
Defendant contends the trial judge erred in denying his motion to quash the indictment and motion for a mistrial on the ground that he was denied the right to trial by a jury representing a fair cross-section of the community. He argues first that the fourth petit jury venire was improperly selected. Secondly, he argues that, after questioning on their qualifications, no blacks remained among the qualified members of the third and fourth petit jury venires.
To support a challenge made to the composition of a jury venire, the defendant must demonstrate that the state has not complied with the statutory procedures for the selection of the venire or that there has been systematic discrimination affecting a class of persons in the selection of the jury panel. State v. Taylor, 347 So.2d 172 (La. 1977).
First we address the issue presented by defendant's contention that the fourth petit jury venire was improperly selected. In the instant case, several petit jury venires had to be called in order to select a jury panel. On the fourth day of voir dire examination, the trial judge ordered the summoning of tales jurors from among bystanders as provided in La.Code Crim.P. art. 785(D). Defendant argues that this method of selection of tales jurors was improper.
There is no merit to this contention. In State v. Monk, 315 So.2d 727 (La.1975), this court stated:
. . . Article 785(D) clearly authorizes the trial judge to order the summoning of tales jurors from among the bystanders or persons in or about the courthouse `in place of the drawing of tales jurors.' The Official Revision Comment in paragraph (e) states that, under this article, `in parishes other than Orleans, the court has unrestricted authority to summon bystanders as tales jurors. In some sparsely populated areas of the state, the use of bystanders as jurors is *514 preferable to summoning tales jurors who might reside at a far distance from the court.' Permitting the selection of tales jurors from among bystanders or persons in or about the courthouse is not violative of the right to an impartial jury. See State v. McGuire, 254 La. 560, 225 So.2d 215 (1969); State v. Ferguson, 240 La. 593, 124 So.2d 558, cert. denied, 366 U.S. 913, 81 S.Ct. 1089, 6 L.Ed.2d 237 (1960).
Similarly, we find that this method of selection of tales jurors is not per se violative of defendant's right to trial by a jury representing a fair cross-section of the community.
We next consider the issue concerning the absence of blacks from the third and fourth petit jury venires. Defendant merely argues that all black members of these two venires were excused on the basis that they were not qualified to serve as jurors. Yet, he does not allege that they were wrongfully or systematically excluded. Defendant has failed to demonstrate the systematic exclusion of blacks from the jury venires required to challenge successfully the composition of the jury panel on such a basis. State v. Lewis, 353 So.2d 703 (La.1977); State v. Taylor, supra.
For the reasons assigned, the trial judge did not err in denying defendant's motion to quash the indictment and motion for a mistrial.
Assignments of Error Nos. 20 and 21 are without merit.

ASSIGNMENTS OF ERROR NOS. 22 AND 23
Defendant contends the trial judge erred in denying his challenges for cause of three prospective jurors, Messrs. Peebles, Stacks and Braddock. He argues that the prospective jurors were not impartial. Defendant exercised a peremptory challenge against Mr. Braddock and exhausted his peremptory challenges before completion of the panel. La.Code Crim.P. art. 800.
This court has repeatedly held that the trial judge is vested with broad discretion in ruling on challenges for cause and that only where it appears, upon review of the voir dire examination as a whole, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will this court reverse the ruling of the trial judge. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Passman, 345 So.2d 874 (La.1977); State v. Weathers, 320 So.2d 895 (La.1975).
During voir dire examination, both the state and defendant extensively questioned Messrs. Peebles, Stacks and Braddock. Each of these three jurors clearly indicated that they could serve as a fair and impartial juror in the instant case. After carefully reviewing the record, we are satisfied that the testimony on voir dire of each juror, taken as a whole, does not support defendant's contention that the trial judge abused his discretion in denying defendant's challenges for cause of these three jurors.
Assignments of Error Nos. 22 and 23 are without merit.

ASSIGNMENT OF ERROR NO. 24
Defendant contends the trial judge erred in denying his motion to quash the indictment and motion for a mistrial based upon the state's use of peremptory challenges to exclude black prospective jurors allegedly in violation of his rights to due process and equal protection under the law.
The United States Supreme Court, in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), has held that an accused is not denied the equal protection of the law when the state, through the use of its peremptory challenges, prevents blacks from serving on the jury unless he can prove systematic exclusion over a period of time. This court has adopted those views expressed in Swain and has refused to find a denial of equal protection unless this historical pattern of systematic exclusion is demonstrated. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Johnson, 343 So.2d 155 (La.1977); State v. Bennett, 341 So.2d 847 (La.1976); State v. Haynes, 339 So.2d 328 (La.1976). Defendant has not made the requisite showing in this case.
*515 Accordingly, the trial judge did not err in denying defendant's motion to quash the indictment and motion for a mistrial predicated upon this ground.
Assignment of Error No. 24 is without merit.

ASSIGNMENTS OF ERROR NOS. 26 AND 30
Defendant contends the trial judge erred in overruling his objections to certain questions asked by the state of the rape victim. He argues that the questions were leading and that one question assumed facts not in evidence.
During the state's direct examination of the rape victim, she testified that the first rapist placed a rag over her face and that it seemed like a washcloth with a rough texture. She also stated that, after the first rapist had sexual intercourse with her, he gave her the washcloth to clean herself; then she was raped again by another man. The state showed the victim a washcloth and asked, "Would you examine that from the texture and see if that appears to be" Defendant interrupted, objecting to the question, the first at issue, as leading. The trial judge asked the state what it intended to ask. The state replied, "If that appears to have the same texture as the cloth that was put over her face." Defendant's objection was overruled, and the state was allowed to ask the question. The victim answered in the affirmative.
Also during the direct examination of the victim, the state asked:
Is the man who got in your car with the gun on the North Market Street Shopping Center who drove you to an isolated dead end street on Dorian Terrace, who while holding a gun on you had sexual intercourse with you against your will and after having done so inserted the barrel of a gun
Defendant interrupted the question, the second at issue, and objected on the grounds that it was leading and assumed facts not in evidence. The trial judge sustained the objection and instructed the state not to lead the witness or state facts not yet proven. Subsequently, the state asked the witness, "Would you tell the Jury what [the rapist] did [with the gun] please?" Defendant objected to the question, the third at issue, as leading. The objection was overruled, and the witness testified that "he spread my legs apart and shoved the gun inside of me" and "moved it back and forth."
First, we address defendant's contention that the questions were leading. It is well settled that, while counsel should not be permitted to mold testimony of a witness, a verdict should only be disturbed on that ground where there was a clear abuse calculated to prejudice the rights of the accused. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Terregano, 336 So.2d 859 (La.1976); State v. Washington, 294 So.2d 794 (La. 1974).
At the outset, we find that the third question at issue was not leading. Secondly, even if the first two questions at issue had been improper, defendant has not demonstrated wherein he was prejudiced nor that the questions were calculated to prejudice his rights. A rape victim is necessarily a very sensitive witness, and the state must sometimes pose very embarrassing questions. It is often difficult to place evidence before the jury in such cases while adhering strictly to the rules on the form of questioning. We do not consider that the state in the instant case posed the questions at issue by design to prejudice defendant's rights nor that defendant was in fact prejudiced. Hence, the trial judge did not err in overruling defendant's objections that the questions were leading.
Also, we find to be without merit defendant's contention that the second question at issue presents reversible error because it assumed a fact not in evidence. See La.R.S. 15:278. Defendant interrupted the question before the pertinent information was stated. His objection to the question was sustained and he requested no further relief. The trial judge committed no error in handling this matter. In any event, the pertinent information was subsequently related by the rape victim herself.
*516 Assignments of Error Nos. 26 and 30 are without merit.

ASSIGNMENT OF ERROR NO. 27
Defendant contends the trial judge erred in overruling his objection to the victim's in-court identification of defendant as her rapist on the ground that it was unduly suggestive.
During trial, the state asked the rape victim if the rapist was present in court. Defendant objected to an in-court identification on the ground that he was one of only two black men in the courtroom and was the only black man seated at counsel table. He requested an in-court lineup identification. The trial judge overruled the objection and did not allow the in-court lineup. Subsequently, the victim identified defendant as the rapist. On cross-examination, defendant questioned her extensively concerning her ability to see the rapist before, during and after the offense.
In State v. Johnson, 343 So.2d 155 (La. 1977), this court stated:
. . . It is true that the conspicuous display of the defendant alone in the accusatorial spotlight might dispel the doubts of some uncertain witnesses. However, ` . . . this circumstance does not indicate or unduly suggest to the witness that defendant committed the crime, only that he is charged with its commission.' State v. Daniels, 326 So.2d 340, 343 (La.1976). In Daniels, supra, and State v. Brooks, 294 So.2d 503 (La.1974), the court suggested that counsel's right to cross-examine and question the weight to be given identification testimony was sufficient to remedy any suggestion inherent in the in-court identification process. State v. Boettcher, 338 So.2d 1356 (La.1976).

State v. Boettcher, supra, and State v. Jackson, 338 So.2d 1363 (La.1976), held that a trial judge has the discretion to grant an accused's request for a pretrial line-up, but did not alter the rule that a defendant is not entitled to an in-court line-up. The decision whether such a protective measure is required is entrusted to the trial court's discretion:
'The trial court likewise has broad discretion to order protective measures other than a pretrial line-up, such as by seating the defendant elsewhere than in the normal place of an accused in the courtroom.' State v. Boettcher, 338 So.2d 1356, 1361.
In the instant case, the fact that defendant was the only black man seated at counsel table does not render the in-court identification inadmissible, although this factor is one to be considered by the jury in weighing the testimony of the in-court identification. See State v. Daniels, 326 So.2d 340 (La.), cert. denied, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Defendant had ample opportunity to extensively cross-examine the victim, a sufficient remedy to any suggestion inherent in the in-court identification process. See State v. Johnson, supra; State v. Daniels, supra. Hence, the trial judge did not err in overruling defendant's objection to the in-court identification as conducted.
For the first time in brief, defendant raises a new contention, i. e., that the in-court identification was solely dependent upon a pretrial lineup identification, the validity of which was not proven at trial.[3] La.Code Crim.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless the defendant has made known to the court his objection and the grounds therefor. A new basis for an objection cannot be raised for the first time on appeal. State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Williams, 343 So.2d 1026 (La.), cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); State v. Marks, 337 So.2d 1177 (La.1976). In any event, after review of the pertinent portion of the record, we find no merit to the new contention.
Assignment of Error No. 27 is without merit.

*517 ASSIGNMENT OF ERROR NO. 28
Defendant contends the trial judge erred in overruling his objection to a question asked by the state of a witness on redirect examination. He argues that the subject matter was beyond the scope of cross-examination.
During trial, Charles Burton testified as a state witness. On redirect examination, the state asked him if his residence was in Caddo Parish. Defendant objected on the ground that he had not cross-examined the witness on that matter. The trial judge overruled the objection. However, the state did not repeat the question; and the witness did not answer it. The state tendered the witness for recross-examination by defendant. Defendant apparently chose not to recross-examine the witness.
We find no merit to this assigned error. In State v. Sneed, 328 So.2d 126 (La.1976), this court stated:
. . . Notwithstanding the arguable contention that the redirect examination was beyond the direct and cross-examination, the application of the rule which confines redirect examination of a witness to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination is within the discretion of the trial judge. La.R.S. 15:281. Since defense counsel was not denied the opportunity to recross on the new matter alleged to have been brought out on redirect, there was no abuse of the discretion vested in the trial judge. State v. Watson, 301 So.2d 653 (La.1974); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972), cert. denied, 410 U.S. 944, 93 S.Ct. 1378, 35 L.Ed.2d 610.
We find that the trial judge did not err in overruling defendant's objection to the question asked by the state to Mr. Burton on redirect examination. Moreover, Mr. Burton did not answer the question; therefore, defendant suffered no prejudice.
Assignment of Error No. 28 is without merit.

ASSIGNMENT OF ERROR NO. 29
Defendant contends the trial judge erred in overruling his objection to certain testimony of a state witness on the ground that it constituted hearsay.
During trial, Mrs. Verdell Burton testified that a little girl, about six years old, rang her door bell between 9:30 and 10:00 p. m. on the night of the alleged rape. She stated that, when her husband answered the door, the girl asked him to call the police because her mother was locked inside a car trunk and her younger brother and sister were alone on the front seat of the car. Mrs. Burton then testified that she called the police. Defendant objected to any hearsay testimony; the trial judge overruled the objection. Mrs. Burton further testified that she told the police to hurry because there was a baby in the car. On cross-examination, defendant asked Mrs. Burton if the girl had said anything more. The witness replied:
She told us the children was there. She said, `My mother told me to come to your house and ask for help. And this is where we saw a light.' She went on to say other things that her mother had told her to come and say.
Mrs. Burton did not elaborate; she never mentioned the rape in her testimony.
At the outset, we note that the testimony at issue did not constitute hearsay. Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. King, 355 So.2d 1305 (La.1978); C. McCormick, Evidence, § 246 (Cleary ed. 1972). A wellknown rule is that evidence is non-hearsay which is offered not to prove the truth of the facts recited, but to prove that the utterance occurred. State v. Mitchell, 356 So.2d 974 (La.1978); State v. Cass, 356 So.2d 936 (La.1977); State v. Williams, 341 So.2d 370 (La.1976); State v. Monk, 315 So.2d 727 (La.1975); State v. White, 301 So.2d 321 (La.1974). The testimony of Mrs. *518 Burton was not hearsay because, although it related the statement of a third person, it was offered to prove that the utterance occurred, thereby prompting her to call the police, and not to prove the truth of the statement of the third person, I. e., that the child's mother was locked inside a car trunk and her younger siblings were alone in the car. Moreover, although on cross-examination defendant invited further testimony concerning the child's statements, Mrs. Burton's testimony in no way referred to the alleged rape.
In any event, even had the testimony constituted hearsay, the child's statements were admissible as part of the res gestae. Res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before and after commission of crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:447 and 448; State v. Batiste, 318 So.2d 27 (La. 1975); State v. Morgan, 296 So.2d 286 (La.1974); State v. Edwards, 287 So.2d 518 (La.1973); State v. Curry, 263 La. 997, 270 So.2d 484 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). Specifically, a plea for help by the witness of a crime has been held to be part of the res gestae and allowed to be related at trial by the person whose aid was sought. State v. Sneed, 328 So.2d 126 (La. 1976). Hence, Mrs. Burton was properly allowed to testify as to the statements made by the victim's daughter when she sought aid for her mother. These statements were clearly part of the res gestae.
In sum, the trial judge did not err in overruling defendant's objection to the testimony. Assignment of Error No. 29 is without merit.

ASSIGNMENTS OF ERROR NOS. 32, 34, 35, 37, 38, 39 AND 50
Defendant contends the trial judge erred in allowing the admission of certain items of physical evidence. He argues first that some of this evidence was irrelevant and, secondly, that the state failed to lay the proper foundation for the admission of all of the items.
This court has consistently held that the trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978); State v. Russell, 352 So.2d 1289 (La.1977); State v. George, 346 So.2d 694 (La.1977); State v. Owens, 301 So.2d 591 (La.1974); State v. Ackal, 290 So.2d 882 (La.1974). In the instant case, testimony at trial linked each of the items introduced in evidence to either defendant or his co-participant in the rape. Because each was relevant to the offense, the trial judge did not err on this basis in admitting the evidence. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).
Defendant's contention that the state failed to lay a proper foundation for admission of the evidence is also without merit. To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Robertson, No. 60,909, 358 So.2d 931 (La., April 10, 1978); State v. King, supra; State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), cert. denied, 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972). For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. State v. Robertson, supra; State v. King, supra; State v. Williams, 341 So.2d 370 (La.1976); State v. Collins, 328 So.2d 674 (La.1976). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the jury. State v. Robertson, supra; State v. King, supra; *519 State v. Hayes, 306 So.2d 705 (La.1975); State v. Freeman, 306 So.2d 703 (La.1975); State v. Dotson, supra; State v. Wright, 254 La. 521, 225 So.2d 201 (1969).
After reviewing the record, we find that the state laid an adequate foundation for admission of each item in evidence by showing that it was more probable than not that each item was connected with the case. Hence, the trial judge did not err in admitting the items in evidence.
Assignments of Error Nos. 32, 34, 35, 37, 38, 39 and 50 are without merit.

ASSIGNMENT OF ERROR NO. 33
Defendant contends the trial judge erred in overruling his objection to a question asked by the state of an expert witness on the ground that it was irrelevant.
During trial, Lt. William Jordan testified as an expert in the field of fingerprint identification. On cross-examination, defendant asked if he had found latent prints in a stolen car matching those of a certain man. Lt. Jordan replied in the negative. Defendant then asked, ". . . [C]ould a man drive a car like this Pontiac, for an extended period of time without wearing gloves, and fail to leave prints somewhere on the vehicle?" The witness answered in the affirmative.
Later during trial, Lt. Jimmy McEachern was accepted, without objection by defendant, as an expert in the field of fingerprint identification. On direct examination, he testified that he had examined the rape victim's automobile, allegedly driven by defendant, but found no latent prints matching those of defendant. The state then asked, "Is it possible, in your opinion, that Mr. Drew could have operated that vehicle and not left prints which could have been obtained" Defendant objected to the question on the ground that it was irrelevant. The trial judge overruled the objection. The witness subsequently answered the question in the affirmative.
La.R.S. 15:441 provides:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
This court has consistently held that the trial judge is vested with wide discretion in determining the relevancy of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978); State v. Russell, 352 So.2d 1289 (La.1977); State v. George, 346 So.2d 694 (La.1977); State v. Owens, 301 So.2d 591 (La.1974); State v. Ackal, 290 So.2d 882 (La.1974).
In the instant case, defendant himself had asked a similar question of another expert witness. The fact that Lt. McEachern found no latent prints in the victim's automobile matching those of defendant was a relevant fact tending to negative the commission of the offense. The question asked by the state of Lt. McEachern was necessary to explain that fact by soliciting an expert opinion that it was possible for defendant to have driven the automobile without leaving fingerprints therein. Hence, the trial judge did not err in overruling defendant's objection to the question.
Assignment of Error No. 33 is without merit.

ASSIGNMENT OF ERROR NO. 36
Defendant contends the trial judge erred in allowing the admission in evidence of certain washcloths and testimony concerning them. He argues that the washcloths were not fairly mentioned in the state's opening statement.
The state's opening statement included the following remark:
The state will produce the gun used in the commission of this offense as well as other items of physical evidence including pictures, clothes and other related materials.
The state's evidence need not be detailed in the opening statement. The statement's *520 primary function is to set forth in general terms the nature of the charge and of the evidence sufficiently to enable the jury to follow the proceedings and to inform the accused of what acts on his part the state intends to prove. La.Code Crim.P. arts. 766, 769; State v. Robertson, No. 60,909, 358 So.2d 931 (La., April 10, 1978); State v. Sneed, 316 So.2d 372 (La.1975). In the instant case, the state's opening statement set forth the nature of the evidence sufficiently. Hence, the trial judge did not err in admitting in evidence the washcloths and testimony concerning them.
Assignment of Error No. 36 is without merit.

ASSIGNMENTS OF ERROR NOS. 40 AND 41
Defendant contends the trial judge erred in accepting Lt. Jordan as an expert in the field of fingerprint identification and Ms. Judy Houston as an expert in the fields of serology and microscopic examination.
We note first that the record reveals no objection to the acceptance of Lt. Jordan as an expert in his field. In the absence of a contemporaneous objection, an alleged irregularity or error in the proceeding cannot be availed of after verdict. La.Code Crim.P. art. 841; State v. Robertson, No. 60,909, 358 So.2d 931 (La., April 10, 1978); State v. Williams, 343 So.2d 1026 (La.), cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 587 (1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Knight, 323 So.2d 765 (La.1975).
In any event, we find that both witnesses were properly qualified as experts in their respective fields. La.R.S. 15:466 sets out the guidelines for the qualification of expert witnesses:
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.
We have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Lewis, 353 So.2d 703 (La. 1977); State v. Madison, 345 So.2d 485 (La. 1977); State v. Marks, 337 So.2d 1177 (La. 1976); State v. Vassel, 285 So.2d 221 (La. 1973). The record discloses that both witnesses possessed sufficient education and practical experience in their respective fields to qualify as experts therein. Moreover, both witnesses had previously qualified as experts on several occasions in district courts in Louisiana. We cannot, therefore, find that the trial judge abused his discretion in accepting these witnesses as experts in their respective fields.
Assignments of Error Nos. 40 and 41 are without merit.

ASSIGNMENT OF ERROR NO. 43
Defendant contends the trial judge erred in sustaining the state's objection to a question asked by defendant of a defense witness.
During direct examination of a defense witness, defendant asked whether he had offered to take a polygraph test. The state objected to the question. The witness nevertheless answered in the affirmative; the trial judge then sustained the objection and instructed the jury to disregard the witness' answer.
The results of polygraph tests are not admissible in evidence. State v. Weeks, 345 So.2d 26 (La.1977); State v. Governor, 331 So.2d 443 (La.1976); State v. Refuge, 270 So.2d 842 (La.1972). Likewise, testimony of a witness that he has taken or was willing to take a polygraph test is also inadmissible. In State v. Refuge, supra, this court stated:
. . . Such evidence is excluded as an attempt by indirection to evade the direct prohibition against lie-detection testimony for jury consideration, based upon the incompetency and unduly prejudicial effect of such testimony in judicial proceedings.
*521 Hence, the trial judge did not err in sustaining the state's objection to the question.
Assignment of Error No. 43 is without merit.

ASSIGNMENT OF ERROR NO. 44
Defendant contends the trial judge erred in refusing to give a requested special charge to the jury pertaining to resolution of conflicting testimony and the credibility of witnesses. Defendant's requested charge was confusing and not wholly correct. In any event, the proper law on the subject was correctly included in the trial judge's general charge to the jury. Hence, the trial judge correctly refused to give the requested special charge. La.Code Crim.P. art. 807.
Assignment of Error No. 44 is without merit.

ASSIGNMENT OF ERROR NO. 46
Defendant contends the trial judge erred in allowing the state, after trial had begun, to amend the indictment charging defendant with the instant offense by changing the date on which the indictment was filed.
After opening statements were delivered on June 4, 1977, the state moved to amend the indictment to correct a typographical error by changing the date of the filing of the indictment from December 9, 1977, to December 9, 1976. Defendant objected to the amendment; the trial judge overruled the objection, allowing the amendment.
Article 487 of the Code of Criminal Procedure states that the court may cause an indictment to be amended at any time with respect to a defect of form. Even a mistake respecting the date on which the offense occurred has been held to be such a defect of form, when not essential to the offense. State v. McCoy, 337 So.2d 192 (La.1976); State v. Sharp, 321 So.2d 331 (La.1975); State v. Hubbard, 279 So.2d 177 (La.1973); State v. Pickett, 261 La. 237, 259 So.2d 307 (1972); State v. Martin, 255 La. 961, 233 So.2d 898 (1970). The incorrectness of the date on which the indictment was filed was merely a defect of form; it was not essential to the offense. Moreover, defendant made no motion for a recess, nor does he make a showing of surprise or prejudice resulting from the amendment. Finally, since the trial began prior to December 9, 1977, it was obvious to defendant that the indictment was not filed on that date.
Assignment of Error No. 46 is without merit.

ASSIGNMENT OF ERROR NO. 48
Defendant first contends the trial judge erred in denying his motion for a new trial based on various grounds urged in other assignments of error on appeal. For the reasons assigned, we find no merit to this contention.
Defendant also assigns as error the trial judge's denial of his motion for a new trial grounded on the claim that the verdict is contrary to the law and evidence. It is well settled that such an allegation presents nothing for this court's appellate review. State v. Cass, 356 So.2d 936 (La.1977); State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Williams, 343 So.2d 1026 (La.), cert. denied, 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); State v. Jack, 332 So.2d 464 (La.1976). In brief to this court, defendant contends the trial judge erred in denying his motion for a new trial on the ground that there was no evidence to support his conviction. A new basis for a motion for a new trial cannot be raised for the first time on appeal. State v. Cass, supra. Nevertheless, we have reviewed the record and find substantial evidence to support defendant's conviction.
In sum, the trial judge did not err in denying defendant's motion for a new trial. Assignment of Error No. 48 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO and DENNIS, JJ., concur.
*522 TATE, J., assigns additional concurring reasons.
DIXON, J., concurs with reasons.
TATE, Justice, concurring.
With regard to Assignments 7-19, the prospective jurors were properly excused for cause relating to their refusal to accept the instructions of the court with regard to applying the death penalty. If they had not been properly excused, contrary to statute the state would have received additional peremptory challenges. See concurring opinion in State v. Miles, 339 So.2d 735, 740 (1976). Therefore, I regard as dicta the additional reason assigned by the majority that the complaint became moot because the defendant did not in fact receive the death penalty, even though by reason of the improperly granted challenges for cause he had been deprived of the availability of jurors to which he was entitled by law.
Likewise, with regard to Assignment 29, the witness's testimony as to the little girl's request for help was admissible for the reasons stated by the majority, but I would not agree with the broad statement of the testimony's admissibility as res gestae insofar as it implies that any and all such post-crime hearsay statements by a non-participant are admissible as res gestae.
DIXON, Justice (concurring).
I respectfully concur, agreeing with the holding, but not the dicta, in the treatment of Assignment No. 4. As for Assignment No. 29, the child's report should not be called "res gestae."
NOTES
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 13, 25, 31, 42, 45 and 47. Therefore, we consider these assignments of error to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] By Act 343 of 1977, the legislature amended La.R.S. 14:42 to provide for a sentence of life imprisonment without benefit of parole, probation or suspension of sentence upon conviction for aggravated rape. Hence, the bifurcated procedure provided under La.Code Crim.P. arts. 905, et seq., is no longer applicable to aggravated rape cases.
[3] Defendant's motion to suppress the pretrial lineup identification was denied after hearing. He does not assign as error the denial of this motion.