444 So.2d 347 (1983)
STATE of Louisiana
v.
Donald Lee CAGE.
No. 83 KA 0828.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Ossie Brown, Dist. Atty. by Leila Withers, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
*348 Michele Fournet, Appellate Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, COLE and SAVOIE, JJ.
SAVOIE, Judge.
Donald Lee Cage, defendant, was found guilty of manslaughter and sentenced to two years unsupervised probation. Under the enhancement provisions of L.S.A.-R.S. 14:95.2[1], the trial court further sentenced the defendant to two years at hard labor without benefit of parole, probation or suspension. Defendant appeals both his conviction and sentence.
On March 21, 1981, defendant encountered his former paramour, Sharon Denise Rogers, and her friend, Collese Samuel, at a local lounge. Ms. Samuel stated that she and Ms. Rogers, the victim, had gone out for an evening's fun. While seated at a table, the defendant approached the women and while Ms. Samuel danced, a discussion between Ms. Rogers and the defendant ensued. At "closing time", the parties exited the lounge. Ms. Rogers and Ms. Samuel departed in Ms. Samuel's vehicle while the defendant departed in his. Enroute home, the defendant pulled alongside the driver's side of the Samuel vehicle at a stop light. Both Ms. Rogers, who was driving, and Ms. Samuel ducked down after seeing some movement by the defendant's arm toward them. When Ms. Rogers thought the light had changed to green, the women "popped up" and sped off. Upon arriving at Ms. Rogers' apartment, she and Ms. Samuel entered. Before Ms. Samuel could shut the apartment's door, the defendant appeared and entered the apartment. Both the defendant and Ms. Samuel, the only living eye-witnesses to this incident, testified that the defendant entered the apartment with a weapon. A discussion ensued between Ms. Rogers and the defendant in various locations of the apartment. While in the kitchen, "playing" with the gun, it discharged with the bullet striking the victim in the face. Ms. Samuel was not an eye-witness to the actual shooting. Immediately after the shooting, Ms. Samuel entered the kitchen and saw the defendant standing over Ms. Rogers. She then ran out of the apartment to Ms. Rogers' sister's apartment next door. When they returned, the defendant had already picked up Ms. Rogers and was transporting her to his vehicle. He thereafter took her to Earl K. Long Hospital and remained with her until her death.
Defendant was charged by indictment with manslaughter in violation of L.S.A.-R.S. 14:31[2]. In particular, the state relied *349 upon Subsection (2)(a) of the statute. It asserted that the defendant's intentional misdemeanor directly affecting Ms. Rogers (i.e., an aggravated assault) led concomitantly to her death. After a jury trial, the defendant was found guilty of manslaughter and sentenced to two years unsupervised probation. Additionally, the trial court, being bound by L.S.A.-R.S. 14:95.2, sentenced the defendant to two years at hard labor without benefit of probation, parole or suspension of sentence. On appeal, defendant assigned seven errors by the trial court. However, these assignments fall basically into three categories. First, defendant contends the trial court erred when it did not exclude evidence of other crimes and impose the proper sanctions (Assignments of Error Nos. 1-4). Secondly, he contends the trial court erred when it accepted a verdict based upon insufficient evidence (Assignments of Error Nos. 5-6). Finally, the defendant contends the trial court erred when it imposed an excessive sentence (Assignment of Error No. 7).
ASSIGNMENTS OF ERROR NOS. 5-6
Defendant first contends that the evidence used to convict him of manslaughter was insufficient. In so asserting, he claims that the state failed to prove the alleged act of aggravated assault and the consequences of such act.
Evidence is sufficient to support a conviction when any rational trier of fact, gleaning the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt the essential elements of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and State ex rel. Danny H. Graffagnino v. King, 436 So.2d 559 (La.1983).
Here, the only living eye-witnesses to the incident are the defendant and Ms. Samuel. Each gave a conflicting story about that night's occurrences. Based upon the guilty verdict, we must conclude that the jury found the testimony proved beyond a reasonable doubt, all the essential elements of the crime. Further, while we note that there was conflicting evidence presented by these two witnesses, such conflicting testimony does not constitute insufficient evidence of that crime. L.S. A.-Const. Art. 5, Section 5(C); and State v. Tompkins, 403 So.2d 644 (La.1981). We find the trier of fact's findings, when viewed in the light most favorable to the prosecution, not to be in error. Accordingly, defendant's assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 1-4
In brief, defendant next contends the trial court erred in not excluding certain evidence of other crimes. He contends that certain actions prior to the shooting are not part of the res gestae and, as such, should have been excluded. As "other crimes," defendant claims they should have been set forth in response to certain discovery questions. The state contends that such act was part of the res gestae and, as such, not required to be set forth in response to defendant's discovery questions.
La.R.S. 15:447 and 15:448 provide:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal acts, or *350 immediate concomitants of it, or form in conjunction with it one continuous transaction."
Professor Pugh, in discussing the meaning of res gestae in relation to the admissibility of evidence of extraneous offenses under the Prieur Doctrine (State v. Prieur, 277 So.2d 126 (La.1973)) stated:
"... The meaning of the term res gestae in this area is unclear. It seems clear, however, that its meaning here is by no means necessarily the same as that in the hearsay area. Therefore, cases holding out-of-court declarations admissible under the so-called res gestae exception to the hearsay rule are not necessarily controlling here. In light of the purposes behind the Prieur guidelines, it is believed that for evidence of other crime to qualify as res gestae under Prieur, the other crime must be so closely connected that the indictment or information as to the instant crime is deemed to carry with it notice as to the other crime as well. Although the court does not talk in terms of this test, it appears to be requiring a very close relationship indeed." Pugh, Work of Appellate Courts-1972-1973, 24 La.L.Rev. 525-527. (Footnotes omitted).
The courts, following this rationale, have required a very close connexity between the charged offense and the offenses sought to be introduced under the res gestae exception. See State v. Schwartz, 354 So.2d 1332 (La.1978) and cases cited therein.
In the instant case, the state introduced evidence that the defendant pointed a holstered weapon at Ms. Rogers and Ms. Samuel when they were stopped at the traffic light. The state contends that this act amounts to an aggravated assault in that the women were placed in reasonable apprehension of receiving a battery. It further contends that there was one continuous transaction commencing at this aggravated assault and ending in Ms. Rogers' death. As such, the state asserts this aggravated assault is part of the res gestae and defendant need not have been notified prior to trial of its intended use.
We find that the incident at the traffic light was part of the res gestae of the entire incident. Further, assuming, arguendo, that the traffic light incident was not an aggravated assault, we find that the victim was placed in reasonable apprehension of receiving a battery just prior to her death.[3] Accordingly, defendant's assignments are without merit.
ASSIGNMENT OF ERROR NO. 7
Defendant finally contends that the trial court erred in imposing an excessive sentence. He contends that the trial court's imposition of the enhancement provisions of L.S.A.-R.S. 14:95.2 does not satisfy minimum due process requirements.
This statute does not create a separate crime. Rather, it mandates that an additional penalty be imposed when a person commits certain crimes while using a firearm or explosive device. It is based upon the proof of those facts during the trial. There is no substance to defendant's contention that one must be separately charged under such statute. Adequate notice and opportunity to defend against such enhancement statute was afforded to the accused. See State v. Roussel, 424 So.2d 226 (La.1982). As such, the defendant's assignment of error is without merit.
For the above and foregoing reasons, judgment and conviction of the trial court are hereby affirmed.
AFFIRMED.
NOTES
[1] "§ 95.2. Additional penalties for possession of a firearm or explosive device in the commission of certain crimes

"Notwithstanding any other provisions of law to the contrary, any person who uses a firearm or explosive device at the time he commits or attempts to commit the crime of second degree murder, manslaughter, aggravated battery, simple kidnapping, aggravated escape, aggravated burglary, or aggravated arson or attempted aggravated rape, attempted first degree murder or attempted aggravated kidnapping shall upon conviction serve a term of two years imprisonment for the first conviction and upon conviction for each second and subsequent offense listed in this Section, he shall serve a term of five years imprisonment. The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.
"The prison terms provided under the provisions of this Section, shall run consecutively to any other penalty imposed upon conviction of any of the crimes listed in this Section."
[2] "§ 31. Manslaughter

"Manslaughter is:
"(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
"(2) A homicide committed, without any intent to cause death or great bodily harm.
"(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
"(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
"Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years."
[3] Ms. Samuel testified that when she and Ms. Rogers arrived at the Rogers apartment, Ms. Rogers ran into her apartment telling Ms. Samuel to close the door behind her. Ms. Samuel further stated that Ms. Rogers told the defendant to leave her alone and to return to his wife. Additionally, while Ms. Rogers and the defendant were standing in the kitchen, Ms. Samuel stated that she heard Ms. Rogers say, "don't be pointing the gun in my face cause it might go off."