460 So.2d 692 (1984)
STATE of Louisiana
v.
Frankie Lee SENSLEY.
No. KA 84 0313.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Rehearing Denied December 28, 1984.
Writ Denied March 15, 1985.
*694 William E. Woodward and William G. Carmichael, Asst. Dist. Attys., Clinton, for plaintiff-appellee.
Johnny E. Wellons, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
Defendant, Frankie Lee Sensley, was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42.[1] He pled not guilty and, after a trial by jury, was found guilty as charged. The district court judge sentenced Sensley to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence in the custody of the Louisiana Department of Corrections. This appeal followed.

*695 FACTS
The victim was employed as a bartender at a lounge near the Town of Clinton in East Feliciana Parish, Louisiana. On May 21, 1983, she left work at approximately 7:30 p.m. As she was driving home, her car stopped and she could not get it restarted. She waited for ten minutes, but no one stopped to help her. She began to walk towards Clinton. She stopped at a house and knocked, but no one answered. She continued on until she came to a grocery store where she used a pay phone located outside the store to call her husband. She hung up the phone, turned around and saw a man standing behind her. He offered to help; she declined, saying she was going to find a house with some lights on. The man continued to insist. The man then said, "Get in the car bitch. I've got a 7mm. I'll kill you." He then shoved her into a waiting car and drove her to a vacant field. When they arrived at the field, the man told her to take off her clothes. The victim refused and struggled with the assailant for some time. During the struggle, the victim was slammed against the wall of the car and choked until she could not breathe. The victim was pushed into the back seat of the car and raped. The man then drove her to where her car was parked, left her and fled the scene. Shortly thereafter, a policeman stopped, and the victim told him what had happened. The victim's husband then arrived at the scene.
Clayton Ethridge, a parttime deputy with the East Feliciana Parish Sheriff's Department, testified that on May 21, 1983, he found an abandoned vehicle on Highway 10 west of Clinton. He went back to the Sheriff's Department to check the license plate. He returned to the vehicle at approximately 8:25 p.m. When he arrived, a woman jumped out of the car and told him that she had been raped. Deputy Ethridge called Deputy Delmas Bell.
Delmas Bell, a deputy with the East Feliciana Parish Sheriff's Department, testified that when he arrived on the scene the victim was in a "hysterical condition". He took the victim to the Feliciana Medical Center where she was examined. After this, the victim went with Deputy Bell in his car and pointed out where the assailant had initially approached her, at Farrar's Supermarket at the corner of St. Helena and Banks Streets in Clinton, Louisiana. She also directed him to the location where the rape took place. Deputy Bell collected the victim's blouse and underwear as evidence.
Deputy Bell also testified that he went to the home of Donald L. Dyer, Jr. to arrest defendant for nonsupport. While he was there, he noticed that the car in the yard resembled the description of the car the rapist had used. Deputy Bell learned that the vehicle belonged to Dyer and obtained his permission to search it. He subsequently took the vehicle into custody and turned it over to the State Police Crime Laboratory.
Donald L. Dyer, Jr. testified that he had loaned his car to defendant on the night of May 21, 1983.
Dr. John F. Piker, the Parish Coroner, testified that he examined the victim at approximately 9:10 p.m. on May 21, 1983. She appeared to be anxious and apprehensive and told him she had been raped. There were three abrased areas on the left side of the neck and one abrased area on the right side of the neck. There was congealed ejaculate present on the victim's pubic area. There were no tears or lacerations within the vagina; however, the area was "reddened and injected". Fluid asperated from the victim's vagina revealed multiple sperm present; only one motile (live) sperm was found. The victim's pubic area was combed and a hair that appeared differently from the victim's hair was found. At a later date, blood and sputum samples were taken from the victim. On May 25, 1983, Dr. Piker took blood, sputum and pubic hair samples from the defendant.
Jerry Miller, a forensic scientist with the Louisiana State Police Crime Lab, testified that he searched the Dyer car. He found a white two hole button, blue synthetic and cotton fibers and white synthetic fibers in the rear seat and floor area of the car. *696 These items were compared to buttons and fibers from the blouse the victim wore the night of the attack. Miller testified that the button found in the car and the buttons on the blouse were the same type and the fibers found in the car and the fibers taken from the blouse were microscopically identical.
Miller testified that he compared pubic hair found in the back seat of the car with pubic hair taken from the victim and found them to be microscopically identical. He compared the one strand of foreign pubic hair found on the victim with the pubic hair taken from the defendant and found them to be microsopically identical.
Finally, Miller testified that he performed several serological tests. As a result of these tests, he determined that the victim was a type O-secreter, and the defendant was a type A-secreter. The ejaculate found on the victim was from a type A-secreter. The vaginal aspirate taken from the victim contained seminal fluid from a type O-secreter.
Defendant testified that he was in Clinton on May 21, 1983, to attend a class reunion meeting held at Matthews' Cafe and Bar. At approximately 8:00 or 8:15 p.m., he left Matthews' Cafe and went to an Amoco gas station. He then continued across town to Davis' Cafe and Bar. He arrived at Davis' Cafe at approximately 8:30 or 8:45 p.m. He stayed at Davis' Cafe until 2:15 a.m. Defendant testified that he was wearing a pair of jeans and a light yellow shirt. He was driving Donald Dyer's car on that night.
Melvin Matthews testified that he was present at the class reunion meeting held at Matthews' Cafe on May 21, 1983. Matthews' testimony was unclear as to when he left the cafe. However, Matthews stated that defendant left the cafe just before he did and that when he (Matthews) reached Davis' Cafe, defendant was already there. Matthews remembered defendant as wearing a solid light color shirt.
Yvonne Quiett was also present at the class reunion meeting. She testified that she saw Sensley at the class reunion meeting which ended at about 7:15 or 7:20 p.m. Sensley stayed at Matthews' Cafe after the meeting. She subsequently saw Sensley at Davis' Cafe. She left Davis' between 10:30 and 11:00 p.m.

SUFFICIENCY OF EVIDENCE

(Assignments of Error 9 and 10)
In assignment of error 9, Sensley contends that the State failed to prove beyond a reasonable doubt that there was sexual penetration because the type O-secreter sperm found in the aspirate from the victim's vagina and in her panties could not have come from him because he is a type A-secreter. In assignment of error 10, Sensley contends that the district court committed error by denying his motion for post-verdict judgment of acquittal because, in addition to the claim made in assignment of error 9, the victim testified the defendant had a multi-colored shirt and a green car when in fact he wore a light colored shirt and drove a gray car on the night in question.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
At the trial, the victim made a positive in-court identification of Sensley as the person who raped her. Under cross-examination by Sensley's counsel, the victim also testified that she identified Sensley from a photographic lineup presented to her by police officers shortly after the *697 crime. Sensley's defense was one of alibi wherein he claimed that he was at a meeting for a class reunion at Matthews' Cafe and subsequently was at Davis' Cafe during the time when the offense was committed. The verdict indicates that after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the victim and rejected the alibi evidence presented by the defendant. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984); Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La.Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting on an appeal as a "thirteenth juror" in assessing what weight to give evidencethat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. McDowell, 427 So.2d 1346 (La.App. 2nd Cir.1983); Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983).
The testimony of the victim and the corroborating evidence introduced by the State are sufficient to prove the offense charged. State v. Rives, 407 So.2d 1195 (La.1981); Norman, 448 So.2d at 249.
In support of these assignments of error, defendant points to conflicting testimony concerning the type of shirt worn by the assailant and the color of the car driven by the assailant. The victim testified that the assailant wore a "multicolored silk looking shirt". Defendant testified that he had on a light yellow shirt. Melvin Matthews and Yvonne Quiett testified the defendant was wearing a light colored shirt on the night of the attack. The victim testified that the assailant was driving a dark green car. Donald L. Dyer, Jr. testified that on the night of the attack he lent his blue and gray Buick Regal to the defendant. Such conflicting testimony does not constitute insufficient evidence of the crime. See, for example, State v. Cage, 444 So.2d 347 (La. App. 1st Cir.1983), writ denied, 446 So.2d 1214 (La.1984).
Next, defendant argues that the vaginal aspirate taken from the victim and her panties contained semen from a type O-secreter, while defendant is a type A-secreter. Thus, defendant contends that the State failed to prove beyond a reasonable doubt that he committed the crime. Jerry Miller, the forensic scientist with the Louisiana State Police Crime Lab, testified that the vaginal aspirate taken from the victim contained semen from a type O-secreter and therefore could not have come from defendant who is a type A-secreter. The victim testified that she was married at the time of the incident, but the record does not reflect her husband's blood type. See, for example, State v. Langendorfer, 389 So.2d 1271 (La.1980). However, Miller also testified that the congealed ejaculate found on the victim was from a type A-secreter and therefore could have come from defendant.
Finally, defendant argues that there was no evidence of sexual penetration, an element of the crime of rape. Dr. John Piker, the physician who examined the victim following the attack, testified that "the physical examination showed that there had been recent intercourse." In addition, the record reveals that the victim testified as follows:
Q [D]id the defendant have sexual intercourse with you?
A Yes.
Q And do you know what penetration means?
A Of course, yes.
Q Did he penetrate?
A Yes.
*698 These assignments of error are without merit.

DENIAL OF CONTINUANCE MOTIONS

(Assignment of Error 1)
The defendant contends that the district court committed error by failing to grant two continuance motions filed by him.
The offense occurred on May 21, 1983. Sensley testified that he was arrested at 10:35 p.m. on May 23, 1983, for criminal neglect of family and was charged with aggravated rape on May 25, 1983. The court minutes show that Sensley had a hearing pursuant to La.C.Cr.P. art. 230.1 on May 26, 1983, and Richard C. Howell was his court-appointed counsel. On June 3, 1983, Sensley was indicted for aggravated rape by the East Feliciana Parish grand jury. Also on June 3, 1983, Sensley's court-appointed counsel filed a Brady motion, a motion for a preliminary examination and a motion for a bill of particulars, discovery and inspection (containing 61 interrogatories) on his behalf. On June 13, 1983, Sensley was arraigned with his court-appointed counsel, pled not guilty and a trial date of October 10, 1983, was fixed. On June 22, 1983, a motion for preliminary hearing and bond reduction was filed on behalf of Sensley by an apparently retained counsel, C. Alvin Tyler. On July 12, 1983, Sensley, through his retained counsel (C. Alvin Tyler), withdrew the motion for a preliminary examination and proceeded to trial with the motion for bond reduction. After hearing testimony, the bail for the aggravated rape charge was reduced from $150,000 to $100,000. On September 27, 1983, Johnny E. Wellons enrolled as counsel of record for Sensley and filed a motion for a continuance of the October 10, 1983 trial date asserting that he needed additional time to familiarize himself with the case, prepare a defense and file various motions. (This motion does not state what motions he intended to file.) On October 10, 1983, Johnny E. Wellons filed a second motion for continuance on behalf of Sensley contending that he did not have sufficient time to interview witnesses, that he needed additional time to complete his investigation and that his witnesses had not been served. The motions for continuance were heard by the district court prior to the commencement of the trial on October 10, 1983, and were denied. The court minutes indicate that the motions for continuance were heard on argument of counsel and do not reflect that evidence was taken on the motions.
A continuance is the postponement of a scheduled trial. La.C.Cr.P. art. 708. When a motion for a continuance is based upon the absence of a witness, it must state the facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial; facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and facts showing due diligence used in an effort to procure attendance of the witness. La.C.Cr.P. art. 709. The motions for continuance filed on behalf of Sensley do not contain such allegations.
The jurisprudence interpreting La.C.Cr.P. arts. 707 and 712 holds that the granting or refusal of a motion for continuance rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear abuse of discretion. Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case. Convictions will not be reversed absent a showing of specific prejudice caused by the denial of a continuance. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Shields, 444 So.2d 287 (La.App. 1st Cir. 1983), writ denied, 446 So.2d 312 (La.1984). Although Sensley contends in brief that he needed more time to find witnesses to corroborate his testimony and that witnesses he subpoenaed were not notified of the trial, he does not specifically state who these witnesses are, what specific facts they would testify to and how specifically their absence prejudiced his presentation of the case. Under these circumstances, Sensley has failed to show that the district *699 court judge abused his discretion. State v. Willie, 410 So.2d 1019 (La.1982); State v. Haarala, 398 So.2d 1093 (La.1981).
In addition, a defendant in a criminal case cannot exercise his right to counsel in a way that will obstruct the orderly procedure of the courts and interfere with the fair administration of justice. A criminal defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Seiss, 428 So.2d 444 (La.1983); State v. Champion, 412 So.2d 1048 (La.1982). The record reflects that the defendant had court-appointed counsel shortly after he was arrested and when he was arraigned. The defendant retained counsel of his own choosing three and one-half months prior to the trial date. There is no evidence in the record to show why it was necessary for the defendant to change retained counsel shortly before the commencement of the trial. Absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the eve of trial with the attendant necessity of a continuance and its disrupting implications. Seiss, 428 So.2d at 447.
This assignment of error is without merit.

IN-COURT IDENTIFICATION OF DEFENDANT BY VICTIM

(Assignment of Error 2)
On the day trial commenced, counsel for Sensley filed a motion for in-court identification of the defendant by the victim alleging that she "can not identify defendant from anyone else." The court minutes indicate that this motion was heard on "argument of the counsel" and was denied by the district court prior to the commencement of the trial. Counsel for Sensley contends that the ruling of the district court was error because "Louisiana jurisprudence allows the defendant an opportunity to file a motion for in-court identification lineup with other men similarly situated."
An accused has no constitutional or statutory right to a pretrial or in-court lineup. A district court has broad discretion to order such a lineup in the interest of the fairness of the identification of the defendant, upon proper showing of an exceptional nature that otherwise the trial testimony as to his visual identification may not be reliable. State v. Boettcher, 338 So.2d 1356 (La.1976).
The specific contentions raised by the defendant in this assignment of error were disposed of in State v. Drew, 360 So.2d 500, 516 (La.1978) as follows:
During trial, the state asked the rape victim if the rapist was present in court. Defendant objected to an in-court identification on the ground that he was one of only two black men in the courtroom and was the only black man seated at counsel table. He requested an in-court lineup identification. The trial judge overruled the objection and did not allow the in-court lineup. Subsequently, the victim identified defendant as the rapist. On cross-examination, defendant questioned her extensively concerning her ability to see the rapist before, during and after the offense.
In State v. Johnson, 343 So.2d 155 (La.1977), this court stated:
... It is true that the conspicuous display of the defendant alone in the accusatorial spotlight might dispel the doubts of some uncertain witnesses. However, `... this circumstance does not indicate or unduly suggest to the witness that defendant committed the crime, only that he is charged with its commission.' State v. Daniels, 326 So.2d 340, 343 (La.1976). In Daniels, supra, and State v. Brooks, 294 So.2d 503 (La.1974), the court suggested that counsel's right to cross-examine and question the weight to be given identification testimony was sufficient to remedy any suggestion inherent in the in-court identification process. State v. Boettcher, 338 So.2d 1356 (La.1976).

State v. Boettcher, supra, and State v. Jackson, 338 So.2d 1363 (La.1976), *700 held that a trial judge had the discretion to grant an accused's request for a pre-trial line-up, but did not alter the rule that a defendant is not entitled to an in-court line-up. The decision whether such a protective measure is required is entrusted to the trial court's discretion:
`The trial court likewise has broad discretion to order protective measures other than a pretrial line-up, such as by seating the defendant elsewhere than in the normal place of an accused in the courtroom.' State v. Boettcher, 338 So.2d 1356, 1361.
In the instant case, the fact that defendant was the only black man seated at counsel table does not render the in-court identification inadmissible, although this factor is one to be considered by the jury in weighing the testimony of the in-court identification. See State v. Daniels, 326 So.2d 340 (La.), cert. denied, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Defendant had ample opportunity to extensively cross-examine the victim, a sufficient remedy to any suggestion inherent in the in-court identification process. See State v. Johnson, supra; State v. Daniels, supra. Hence, the trial judge did not err in overruling defendant's objection to the in-court identification as conducted.
The victim testified that she was in the presence of her attacker from the time he forced her into his car until he returned her to her car and that she was positive that the defendant was the man who raped her. The defendant had ample opportunity to cross-examine the victim concerning her identification of him. This was sufficient to remedy any suggestion inherent in the in-court identification procedure.
This assignment of error is without merit.

ADMISSIBILITY OF EVIDENCE SEIZED IN DYER VEHICLE

(Assignments of Error 3 and 4)
In assignment of error 3, Sensley contends that the evidence taken from the Dyer vehicle was not admissible because after the vehicle was seized by Deputy Bell it remained overnight in an unlocked, unsupervised area where anyone could have broken into the car and tampered with it. In assignment of error 4, Sensley contends that evidence taken from the Dyer automobile at the State Police Crime Lab was inadmissible because Deputy Bell lost sight of the car when it was enroute to the lab and Deputy Kilbourne, who was driving the car, did not testify at the trial.
The law applicable to the admissibility of demonstrative evidence is set forth in State v. Sweeney, 443 So.2d 522, 528 (La.1983), as follows:
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Drew, 360 So.2d 500 (La.1978). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient.
See also State v. Tonubbee, 420 So.2d 126 (La.1982).
Donald L. Dyer, Jr. testified that he lent his Buick automobile to Sensley on the night of May 21, 1983. Sensley returned the vehicle to Dyer's possession where it remained until May 25, 1983, when its possession was given to Deputy Delmas Bell.
Deputy Bell testified that he took the vehicle into custody at 11:09 p.m. on May 25, 1983. The vehicle was a 1977 Buick Regal with license number 147X793. Deputy George Kilbourne drove the vehicle from Dyer's home to Bell's home. Bell followed Kilbourne, and the vehicle was in his sight from the time he left Dyer's until *701 he reached his home. The vehicle was parked in Bell's garage and the garage was locked. Only Bell and his wife had access to the garage. Bell testified that to his knowledge no one tampered with the vehicle but admitted that he could not swear that the vehicle was not tampered with at his home. On the morning of May 26, 1983, Deputy Kilbourne drove the Dyer vehicle from Bell's home to the Louisiana State Police Crime Lab in Baton Rouge, Louisiana. Bell followed Kilbourne in another vehicle. Bell lost sight of the Dyer vehicle in traffic after arriving in Baton Rouge but before reaching the crime lab. When Bell arrived at the crime lab a short time later, the vehicle and Kilbourne were there.
Jim Churchman, a forensic scientist for the Louisiana State Police Crime Lab, received a 1977 Buick Regal with license number 147X793 from Deputy Kilbourne at the crime lab. Jerry Miller, a forensic scientist with the crime lab, testified that Churchman received the Dyer vehicle for the crime lab. The vehicle was locked in the crime lab garage. Subsequently, while Churchman and Miller were examining the vehicle, both of them saw the button on the right rear floor area of the Dyer vehicle, and Miller removed it from the vehicle. Miller also removed cloth fibers and pubic hair from the rear seat of the vehicle. Miller testified that he examined a 1977 Buick Regal with license number 147X793.
The victim testified that she noticed a button was missing from her blouse when she took it off to give to Deputy Bell as evidence after the incident. The victim also testified that she was raped on the back seat of the vehicle.
Miller testified that the button found on the back seat of Dyer's vehicle was like the buttons on the victim's blouse, that the cloth fibers found in the vehicle were microscopically identical to fibers of the victim's blouse and that the pubic hair found in the vehicle was microscopically identical to pubic hair of the victim.
The above evidence clearly establishes that it is more probable than not that the button, cloth fibers and pubic hair are connected with the case. The facts that the vehicle did not come into police custody for four days, that Deputy Kilbourne did not testify and that Bell lost sight of the Dyer vehicle when bringing it to the crime lab are factors which go to the weight of the evidence and not its admissibility.
These assignments of error are without merit.

EVIDENCE OF PHOTOGRAPHIC LINEUP

(Assignment of Error 5)
In this assignment of error, defendant argues that, because the State did not introduce the photographic lineup shown to the victim, it was error to allow the victim to testify concerning the photographic lineup.
A review of the record reveals that the victim's testimony regarding the photographic lineup was a result of questioning by defendant and not by the State. Because defendant elicited the testimony regarding the photographic lineup, he cannot now complain of such testimony.
This assignment of error is without merit.

FAILURE TO GRANT RECESSES

(Assignments of Error 6 and 8)
In these assignments of error, it is contended that the district court committed error by not granting defense motions for recesses during the testimony of the victim. The defendant contends that the recesses should have been granted because defense counsel had a severe backache and was unable to concentrate on the trial and because a recess would have allowed the victim to compose herself instead of constantly crying in front of the jury and prejudicing them.
The record reflects that shortly after the victim began testifying under direct examination by the State counsel for the defendant *702 requested a ten minute recess to allow her to compose herself. This request was granted. Subsequently, after the victim testified about being choked and unable to breathe, counsel for the defendant again moved for a recess until the next day contending that he had "a severe backache" and that the victim should be given an opportunity to compose herself. The district court judge denied this motion. Counsel for the defendant renewed his request contending that the victim had "been crying for the last twenty minutes without tears coming out her eyes" and that this conduct was prejudicing his client. Counsel for the defendant then stated that the victim's testimony should not be an "emotional replay of something that she has been over at the District Attorneys office on Thursday." The district court judge retired the jury and made the following statement:
Now, this lady is obviously upset or apparently upset. I do not see that recessing this proceeding until tomorrow will any way, shape or form remedy that situation. It has been a number of months since the incident occurred, and there's no reason to think that one additional day will remedy the problem. I am satisfied that Mr. Carmichael has in no way, shape or form illicited (sic) this conduct from this witness, and it not a product of Mr. Carmichael or anyone else with the District Attorneys office. We are going to proceed in the best fashion that we can. Mr. Carmichael's comments to the witness were in attempt to get her to compose herself in response to your comments Mr. Wellons. I am going to deny the motion made for a recess. I'm going to overrule the objection that Mr. Wellons made to Mr. Carmichael's comments to the witness.
Thereafter the State proceeded to complete its direct examination. At the conclusion of the State's direct examination, counsel for the defendant renewed his request for a recess until the next day to allow the victim to compose herself and because "I'm in pain at the present time." The district court judge denied this motion for a recess. During the course of cross-examination of the victim, counsel for defendant was successful in obtaining a five minute recess. At the end of this recess, counsel for defendant asked the victim if she felt that she could proceed to go forward, and she responded that she could. Counsel for the defendant then proceeded with an extensive and comprehensive cross-examination. No further recesses were requested for the remainder of the trial.
A recess is a temporary adjournment of a trial after it has commenced. La.C.Cr.P. art. 708; State v. Bice, 407 So.2d 1234 (La.1981). The granting of a recess is a matter within the sound discretion of the district court judge, and his ruling will not be reversed in the absence of a showing of an abuse of that discretion. State v. Jones, 412 So.2d 1051 (La.1982).
The record does not reflect that the district court judge abused his discretion. It is not unusual for a victim in a rape case to lose her composure. The record in this case indicates that the victim apparently was able to compose herself and complete her testimony. Although counsel for the defendant twice complained of back pain, a review of the record does not reveal that the pain was sufficient to impede his ability to properly represent his client. Further, no evidence of a back condition was submitted to the district court other than counsel's unsupported statement of pain.
These assignments of error are without merit.

FAILURE TO RECESS JURY DELIBERATIONS

(Assignment of Error 7)
Defendant contends that the district court committed error by failing to recess the jury at 7:00 p.m. and requiring it to serve from 9:00 a.m. until 2:30 a.m. the next day. Counsel argues that the jury was too fatigued to properly analyze the case.
*703 The court minutes indicate that court was opened at 9:30 a.m. on October 10, 1983. After evidence on the merits was completed, the court granted a ten minute recess prior to closing arguments and the court's charge. The jury retired for deliberation at 12:39 a.m. on October 11, 1983. The jury returned at 1:23 a.m. for further instructions and retired again at 1:25 a.m. The jury returned its verdict at 2:12 a.m. The court minutes and the transcript do not reflect that the jury, the State or the defendant requested a recess between the time that the defense rested and the jury returned its verdict.
A trial court irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. La.C.Cr.P. art. 841. The principal purpose of this contemporaneous objection rule is to allow the district court judge an opportunity to rule on the objection and prevent or cure an error. State v. Morris, 429 So.2d 111 (La.1983). Because the defendant did not timely object to the jury commencing its deliberations after an extended day of trial, he cannot raise this objection now for the first time. In any event, it does not appear that the length of the trial was an abuse of discretion. See, for example, State v. Mack, 435 So.2d 557 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La. 1983)
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] According to the minutes, defendant was also indicted for simple kidnapping. However, the record does not include either a copy of the grand jury indictment for simple kidnapping or any information regarding the disposition of the charge.