LANIER, Judge.
The defendant, Steven E. Boudreaux, was charged by bill of information with simple burglary in violation of La.R.S. 14:62. He pled not guilty and, after a trial by jury, was found guilty as charged. He was sentenced to serve ten years in the custody of the Louisiana Department of Corrections, and this sentence was to run consecutively to any sentence he was then serving. This appeal followed.
FACTS
On January 11, 1984, a tool shed inside a barn owned by Lanny Lewis located on Myrtle Grove Plantation in Iberville Parish, Louisiana, was broken into. The tool shed had been locked and the hasp was pulled off of the door. Taken from the shed were a Lincoln welding machine, two impact (air) wrenches and numerous hand tools. This burglary was investigated by James Whitaker, the Chief of Detectives of the Iber-ville Parish Sheriffs Office.
On the afternoon of February 12, 1984, Officer Michael R. Waldrup of the Town of Addis police force was on patrol with Deputy Noel of the West Baton Rouge Sheriffs Office. Waldrup observed a 1966 Dodge pickup truck proceeding in a northerly direction on Louisiana Highway 1 in West Baton Rouge Parish in the vicinity of the Dow Chemical Company (also in the vicinity of the Iberville Parish line). The license plate on the vehicle was behind the bumper and could not be read. Waldrup and Noel stopped the vehicle and learned the driver was Steven Boudreaux. Waldrup knew there was a warrant out from Iberville Parish for Boudreaux. Waldrup and Noel detained Boudreaux until Detectives Whitaker, Edward Engolio, Jr. and Stassi from Iberville Parish arrived to take Boudreaux into custody. Waldrup advised Boudreaux of his rights before the detectives arrived. Whitaker again advised Boudreaux of his rights when he arrived at the place where he was being detained. Boudreaux was turned over to a “road” deputy for transportation to the Iberville Parish Jail.
Prior to the time Boudreaux was taken into custody, the Iberville deputies, through investigation, learned that Curtis Gourges, Jr. had possession of the welding machine taken in the burglary. Gourges advised the officers he obtained the welding machine from Boudreaux and gave the machine to the officers. On the afternoon of February 12, 1984, Gourges was at the Iberville Parish Jail to give a written statement.
When Detective Engolio arrived at the Iberville Parish Jail, Boudreaux was being booked. Engolio got an advice of rights form and again advised Boudreaux of his rights. This form provided as follows:
WARNING AND WAIVER
WARNING AS TO RIGHTS
Before we ask you any questions, it is our duty as police officers, to advise you of your rights and to warn you of the consequences of waiving your rights. You have the absolute right to remain silent.
Anything you say to us can be used against you in court.
You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.
You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish.
If you decide to answer questions, now, without an attorney present, you will still *1023 have the right to stop answering at anytime. You also have the right to stop answering at any time until you talk to an attorney.
WAIVER
I have read the above statement of my rights, and it has been read to me. I understand what my rights are. I wish to make a voluntary statement, and I do not want an attorney. No force, threats, or promises of any kind or nature have been used by anyone in any way to influence me to waive my rights. I am signing this statement after having been advised of my rights before any questions have been asked of my [sic] by the police.
The form was signed by Engolio at 4:40 p.m. on February 12, 1984. Boudreaux acknowledged he understood his rights but declined to sign the form. At 4:44 p.m., Boudreaux executed a form giving consent to search his truck.
Boudreaux saw Gourges while at the jail. Whitaker told Boudreaux “we got the welding machine back, we know where it came from.” Boudreaux then told Whitaker and Engolio “he did the burglary at Lanny Lewis’s tractor shed.” Boudreaux also told the officers “he would be willing to cooperate with us and that he would return the stuff that he stole in that burglary.” Boudreaux took Whitaker, Engolio and Stassi to the Choctaw oil field in a rural area of Iberville Parish where the two impact wrenches and the welding machine lead wires were recovered. The officers and Boudreaux returned to the jail. Bou-dreaux was asked to give a written statement, but he did not want to until after he talked to a lawyer.
OPENING STATEMENT
(Assignment of Error No. 1)
Boudreaux contends the State’s opening statement was so deficient that the State was precluded from introducing evidence to show the commission of the crime. In particular, it is contended the opening statement “only gave conclusions” and “did not outline what type of evidence” the State “was going to introduce to prove the charges against the defendant.”
The purpose and scope of an opening statement by the State is set forth in La.C.Cr.P. art. 766 as follows:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
The opening statement herein explains the nature of the charge (except for the element of venue). However, the opening statement does not set forth in general terms the nature of the evidence by which the State expected to prove the charge. The jury was only told the State would show on January 11, 1984, Steven Bou-dreaux made an unauthorized entry of a gentleman’s yard and tractor shed and that something was stolen from the structure and taken to another place.
Shortly after the first witness (Waldrup) commenced testifying, the following occurred:
MR. D’AQUILA: I’m going to object to all of this anyway, Your Honor. I don’t think it’s relevant. Secondly, in the State’s opening statement, they are required by law to give the nature of the evidence and how they intend to prove the charge. Mr. Myles didn’t give any type of evidence that would be used in the case. All he did was explain the law. Nothing that this officer or any other witness can testify to would be within the scope of his opening statement.
THE COURT: Okay, let’s ask the jury to be taken out, please.
(JURY RETIRED)
MR. MYLES: Your Honor, as I understand the law, all evidence has to be fairly within the scope of the opening statement. I recall my opening statement, I said, we prove that this defendant made an unauthorized entering into a tractor shed and that he took something. We were going to prove *1024 that it was a structure, and that he had intended to deprive a person permanent of it because he had manifested this intent by stealing it. I couldn’t make reference to, of course, any confessions or statements made that possibly could — What we are talking about here is whether it’s in the scope.
MR. D’AQUILA: Your Honor, all we do is give conclusions to the jury. He didn’t state the nature of the evidence. He could at least say what was taken. He didn’t say whose place it was, what type of structure it was, how they prove what was taken. He didn’t say anything about — He did not give the nature of the evidence that he was going to use. All he gave in his opening statement was conclusions of law. That was — The only thing he gave was already in the bill of information that was read by Mrs. Hawkins.

THE COURT: What surprise or prejudice does this or effect does this have on you, Mr. D’Aquila or does it have on Mr. Boudreaux?

MR. D’AQUILA: Your Honor, it doesn’t. I don’t think I have to show the prejudice. The law says the opening statement shall explain the nature of the charge and all he did was explain the nature of the charge and set forth in general terms the nature of the evidence. He didn’t say anything about any evidence that he had. He didn’t even say what was taken or what was allegedly taken.
MR. MYLES: Your Honor, I submit the matter.
THE COURT: Court will overrule the objection. Before we bring the jury back—
MR. D’AQUILA: Your Honor, before you bring them back, I’m going to make an objection general. I’m going to object to anyone testifying about anything because no witnesses — because the State’s opening statement did not give the nature of the evidence as required by Article 766 of the Code of Criminal Procedure.
[Emphasis added].
A trial judge has wide discretion in controlling the scope and extent of an opening statement. State v. Brown, 428 So.2d 438 (La.1983). La.C.Cr.P. art. 769 provides as follows:
Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.
If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense. [Emphasis added].
Counsel for Boudreaux does not claim either surprise or prejudice. The trial judge’s ruling indicates she determined the State was in good faith. After considering these factors and the entire record, we cannot say the trial judge’s ruling was an abuse of discretion. State v. Chapman, 410 So.2d 689 (La.1981); State v. Kendig, 451 So.2d 124 (La.App. 3rd Cir.1984).
This assignment of error is without merit.
ADMISSIBILITY OF CONFESSION
(Assignment of Error No. 2)
Boudreaux contends the trial court committed error by admitting into evidence the verbal inculpatory statements he made to the police officers at the Iberville Parish Jail. He contends the advice of rights form used by Detective Engolio is defective and that the officers continued to question him after he indicated he wanted to remain silent.
The claim that the advice of rights form is defective is patently without merit. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The law applicable to the admissibility of a confession is set forth in State v. Bennett, 454 So.2d 1165, 1172 (La.App. 1st Cir.1984), writ denied, 460 So.2d 604 (La. 1984), as follows:
*1025 The State has the burden of proving the admissibility of a confession. La.C. Cr.P. art. 703(D). The State must show that the confession' was free and voluntary and not induced by threats, promises or coercion. La.R.S. 15:451; State v. Neslo, 433 So.2d 73 (La.1983). When a confession is taken from a person in custody, the State must also show that the person giving the confession was advised of his constitutional rights and that he made an intelligent waiver of those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Benoit, 440 So.2d 129 (La.1983). The State must prove the facts establishing admissibility of a confession beyond a reasonable doubt. State v. Burkhalter, 428 So.2d 449 (La.1983). When a defendant alleges police misconduct in reference to the confession, the State must specifically rebut these allegations. State v. Welch, 448 So.2d 705 (La.App. 1st Cir.1984); State v. Brooks, 434 So.2d 1171 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). The factual conclusions of a district court on the admissibility of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir. 1983), writ denied, 445 So.2d 1232 (La. 1984); State v. Wright, 441 So.2d 1301 (La.App. 1st Cir.1983).
The evidence shows that, after Bou-dreaux was initially stopped, Officer Waldrup advised him of his rights. When Detective Whitaker arrived at the scene, he also advised Boudreaux of his rights. Whitaker testified he advised Boudreaux he was charged with simple burglary in Iberville Parish, he had a right to remain silent, anything he said could be used against him and he had a right to retained or appointed counsel. Whitaker further testified no promises, threats or intimidation were used.
Detective Engolio again gave Bou-dreaux his rights at the Iberville Parish Jail with the advice of rights form. Engo-lio testified no threats, promises or intimidation were used. Boudreaux said he understood his rights but did not want to say anything at that time and declined to sign the advice of rights form. However, after Boudreaux saw Gourges and was told by Whitaker that the police had the welding machine and knew where the machine came from, Boudreaux voluntarily admitted committing the burglary and cooperated with the police officers in retrieving some of the property obtained in the burglary. The trial judge did not commit error in allowing the confession into evidence.
This assignment of error is without merit.
MISTRIAL
(Assignment of Error No. 4)[1]
Boudreaux contends the trial court committed error by refusing to grant a mistrial when the State improperly made an indirect reference to another crime committed by Boudreaux in violation of La.C.Cr.P. art. 770(2).
During the State’s cross-examination of Boudreaux at the trial, the following occurred:
Q Just answer my questions. I understand what you are saying. After you and Mr. Ourso were involved in the taking of this welding machine, okay, did y’all take anything else?
A What do you mean?
Q In regards to—
MR. D’AQUILA: I’m going to object, Your Honor, and I move for a mistrial. Indirect reference by the District Attorney of maybe some other type crime and I move for a mistrial.
THE COURT: Court will deny the motion for a mistrial.
*1026 Q All I want to know, did you take anything else beside the welding machine? I’m only asking in reference to this charge. Don’t tell me anything about anything else I’m not concerned with.
A Did we take anything else from there?
Q Yeah.
A I think there were two air guns taken with that, but not at the same time, or they might have been at the same time. I don’t know. All I know is the date that we got the welding machine, they have two air guns with it that Stoney Ourso brought to my house that day and I had them back there in the woods too with the welding machine. He brought them to me. I don’t know where he got them at, but I had them too with the welding machine.
Mistrial is a drastic remedy and should be used only in instances where it is mandatory or is warranted because a trial error causes substantial prejudice to the defendant and deprives him of a fair trial. State v. James, 459 So.2d 1299 (La.App. 1st Cir.1984), writ denied, 463 So.2d 600 (La. 1985). In the instant case, the State’s question was obviously directed to what additional items were taken when the welder was taken. The question was not about other crimes. Any confusion by Bou-dreaux about the question was clarified by subsequent questions and answers. The trial court’s ruling was correct.
This assignment of error is without merit.
SUFFICIENCY OF EVIDENCE
Boudreaux contends the evidence is insufficient to prove he was guilty of simple burglary and at best only shows he was guilty of illegal possession of stolen things.
In State v. Sensley, 460 So.2d 692, 696-697 (La.App. 1st Cir.1984), writ denied, 464 So.2d 1374 (La.1985), the law applicable to determining the sufficiency of evidence in criminal cases is set forth as follows:
In State v. Mathews, 375 So.2d 1165 (La.1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C. Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witnesses, this is a matter of the weight of the evid'ence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984); Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La. Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting on an appeal as a “thirteenth juror” in assessing what weight to give evidence — that determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witnéss. State v. McDowell, 427 So.2d 1346 (La. App. 2nd Cir.1983); Holmes v. Southeastern Fidelity Insurance Company, 422 So.2d 1200 (La.App. 1st Cir.1982), writ denied, 429 So.2d 133 (La.1983).
Boudreaux testified he met an individual named Stoney Ourso in a lounge. Ourso told Boudreaux he knew a guy at a place *1027 back of Lanny Lewis’ who wanted to sell a welding machine. Boudreaux drove Ourso to the place and dropped him off. He came back later and picked Ourso up. Ourso had the welding machine at that time. Boudreaux put the machine in the back of his truck and drove to his home. Later, Boudreaux took the machine and hid it in the woods back of the Choctaw oil field. Subsequently, Ourso brought the two impact wrenches to Boudreaux’s home. Bou-dreaux hid the wrenches with the welding machine. Boudreaux did not go in Lanny Lewis’ barn, but he figured the welding machine and the wrenches might be stolen. Ourso asked Boudreaux to sell the items and he would get half of the sale price. Boudreaux brought the welding machine to Gourges, and Gourges agreed to buy it for $50. Boudreaux admitted to previous convictions for simple burglary in 1977 and felony theft in 1973.
The evidence presented by the State establishes the facts previously set out herein. The jury’s verdict indicates it accepted the evidence of the State and, after considering Boudreaux’s credibility, rejected his testimony. The evidence submitted by the State is sufficient to prove the offense charged.
This assignment of error is without merit.
DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.

. Assignment of Error No. 3 concerning the admissibility of photographs of the stolen property was not briefed and is therefore considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4; State v. Trevathan, 432 So.2d 355 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1141 (La.1983).