KING, Judge.
The defendant, Gary Childers, was charged by a Grand Jury Indictment with the crime of second degree murder, a violation of LSA-R.S. 14:30.1. On February 17, 1984, the trial court heard a motion to suppress all inculpatory statements made by the defendant and denied the motion. The defendant, having waived trial by jury, was tried by the court and on March 12, 1984 was found guilty as charged. On March 16, 1984, the defendant was sentenced to serve a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension *1011 of sentence. The defendant appeals his conviction. We affirm.
FACTS
On July 5, 1983, Francis “Buckwheat” Theriot, the victim, was found shot to death in rural Vermilion Parish. The defendant and Michael Miller reported the death to the police and stated that they had accidentally found the victim’s body. The defendant, the victim, and Michael Miller were acquaintances.
On the night of July 6,1983, Greg Mayon called the Abbeville Police Department and stated that he had seen Michael Miller place a gun by a house near the intersection of Charity Street and Donald Frederick Boulevard, in Abbeville, Louisiana and that shortly before he did this Miller had talked to him three or four times about the Francis “Buckwheat” Theriot killing. Sgt. Mickey Toups was dispatched to that location and found a Crown Royal bag, containing a .38 revolver, wrapped in a yellow towel by this 'same house.
On July 7, 1983, the Abbeville Police questioned Michael Miller and he stated that he was present when Gary Childers, the defendant, had shot “Buckwheat.” On that same day, ballistics tests performed with the revolver revealed that it was the murder weapon. Based upon this information, Chief Hardy instructed Lt. LeBlanc and Sgt. Toups to locate the defendant and ask him to come to the police station for questioning.
Lt. Earl LeBlanc testified that, after he and Sgt. Mickey Toups had knocked on the door of the defendant’s residence, the defendant opened the door and immediately stated that he knew why the police were at his residence and that “Buckwheat” should not have been messing with him. Lt. Le-Blanc immediately advised the defendant of his Miranda rights but the defendant did not respond as to whether he understood those rights. Lt. LeBlanc then advised the defendant he was under arrest for murder. The defendant and the two police officers then entered the defendant’s residence so that the defendant could get dressed. While inside the residence, the defendant continued to state that the victim should not have messed with him and that “Buckwheat” was turning his friend, Michael Miller, into a “junkie” and that he had “done everybody a big favor.” The defendant also repeated these statements to the officers while he was being transported to the police station. At the police station the defendant then made an oral inculpatory statement.
Defendant urges two assignments of error:
(1) The trial court erred in denying a motion of acquittal or in failing to grant a new trial based on insufficiency of the evidence; and
(2) The trial court erred in denying the motion to suppress the defendant’s incul-patory statements as they were procured as a result of an unconstitutional arrest.
ASSIGNMENT OF ERROR NUMBER ONE
The defendant contends that the trial court erred in denying a judgment of acquittal in that no evidence whatsoever was presented to inculpate the defendant except the statements made by a co-conspirator who was charged prior to trial as an accessory after the fact and who was given immunity from prosecution at the trial of the defendant herein.
Pursuant to Louisiana’s second degree murder statute, the State had the burden of proving that the defendant killed the victim with the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.-1. The standard of review as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to be applied in appellate review is whether any rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proved beyond a reasonable doubt. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Austin, 399 So.2d 158 (La.1981); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the factfinder to weigh the *1012 respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond sufficiency evaluations under the Jackson standard of review. See, State v. Richardson, 425 So.2d 1228 (La. 1983).
In the instant case, Michael Miller testified that the defendant became angry when he realized that one of his father’s guns was stolen and that the defendant blamed the victim for taking the gun. The defendant had Michael Miller arrange a meeting for him with the victim at a parking lot. Miller testified that he observed a .38 caliber revolver in the back of the defendant’s pants on the way to this meeting. After the defendant, Michael Miller and the victim met in Eckerd’s parking lot, the defendant told the victim to follow him and the three traveled to an abandoned home east of Abbeville toward Erath, Louisiana. Once they arrived, the defendant stated that he knew that the victim had stolen his father’s gun and the defendant pulled his gun. Miller testified that the defendant shot the victim, who was unarmed and about fifteen feet away, before the victim could say or do anything. The victim fell to the ground but was still alive calling to Miller to help him. When Miller protested, the defendant pointed his gun at Miller and told him to back off. Miller testified that he began to run down the driveway and soon heard three to four shots fired.[1]
Michael Miller also testified that the defendant decided to pick up the victim’s brother, Anthony Theriot, and another friend, Carl Bourque, after the shooting and act like he and Miller were just looking for the victim. Miller further testified that he took the murder weapon from the defendant’s van door and hid it after talking to Greg Mayon.
Sgt. Toups testified that, acting upon information obtained from Greg Mayon, he retrieved a .38 caliber revolver from inside a Crown Royal bag wrapped in a yellow towel. David Epstein, a firearms expert, testified that ballistics tests performed on the revolver revealed that it was the murder weapon.
Lt. LeBlanc testified that he and Sgt. Toups were dispatched to the defendant’s residence by Chief Hardy to bring the defendant in for questioning after the ballistics tests proved positive and Miller had made his statement. Lt. LeBlanc further testified that, when he knocked on the door, the defendant opened the door and simultaneously stated that he knew why the police officers were there and that “Buckwheat” should not have messed with him.[2] Testimony also revealed that the defendant was immediately advised of his Miranda rights after this admission and placed under arrest for murder but that he continued to repeat that the victim should not have messed with him. Lt. LeBlanc testified that he, Sgt. Toups, and the defendant went into the defendant’s residence for approximately ten minutes, while the defendant got dressed, and that the defendant continued to make incriminating statements while he was dressing and while being transported to the police station. Sgt. Toups’ testimony corroborated that of Lt. LeBlanc.
While at the police station the defendant was again advised of his Miranda rights, signed a waiver of rights form, and in the presence of witnesses gave an oral inculpa-tory statement admitting the crime.
Dr. Thomas Latour, a psychiatrist, testified that, at the time of the crime, the defendant knew right from wrong and that, in his opinion, the defendant was not suffering from a mental disorder at the time of the offense.
In view of the testimony presented by the State’s witnesses, the defendant’s *1013 spontaneous statements when he encountered the officers at his front door and while being taken to the police station, the defendant’s oral inculpatory statements at the police station, and the ballistics reports, a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of second degree murder proven beyond a reasonable doubt. When added to the above evidence, the oral inculpatory statements made by the defendant after his arrest at the police station prove beyond a reasonable doubt that the defendant committed the second degree murder of Francis “Buckwheat” Theriot. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
The defendant contends that the trial court erred in refusing to suppress all of the inculpatory statements that he made after Lt. LeBlanc and Sgt. Toups arrested him at his house without a warrant. Defendant argues that his subsequent incul-patory statements are the “fruits” of an unconstitutional arrest in that there were no exigent circumstances which justified his warrantless arrest.
In order to ascertain the admissibility of defendant’s inculpatory statements, we must first determine whether defendant’s arrest was based upon probable cause to believe that he had committed a crime.
Louisiana Code of Criminal Procedure Article 213 provides in pertinent part:
“A peace officer may, without a warrant, arrest a person when:
* * * sjc * *
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;

The Louisiana Supreme Court in considering the meaning of reasonable cause under this article stated:
“Reasonable cause, which we have treated under this article as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he had reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Drew, 360 So.2d 500 (La.1978). Probable cause may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Drew, supra. Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Drew, supra.” State v. Arceneaux, 425 So.2d 740, 743 (La.1983).
It is well settled that the Fourth Amendment prohibits warrantless arrests of a defendant in his home unless there are exigent circumstances which justify a war-rantless intrusion into the home. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Inculpatory statements procured as a result of an unlawful arrest are tainted and must be suppressed at the trial of the person subjected to the illegal arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Burton, 416 So.2d 73 (La.1982); State v. Walker, 430 So.2d 1327 (La.App. 3rd Cir.1983) and cases cited therein.
The First Circuit Court of Appeal in State v. Pittman, 428 So.2d 979 (La.App. 1st Cir.1983), writ den., 433 So.2d 155 (La. 1983), cert. den., — U.S. —, 104 S.Ct. 122, 78 L.Ed.2d 120 (1983) has recently listed some of the factors to be considered in determining if sufficient exigent eircum- *1014 stances existed at the time of a warrantless arrest to justify such warrantless arrest as follows:
“(1) A grave offense is involved, particularly one that is a crime of violence;
(2) the suspect is reasonably believed to be armed;
(3) there is a clear showing of probable cause, including 'reasonably trustworthy information’ to believe that the suspect committed the crime involved;
(4) there is strong reason to believe that the suspect is in the premises being entered;
(5) there is likelihood that the suspect could escape if not apprehended;
(6) the entry though made without consent is made peaceably.” State v. Pittman, 428 So.2d 979, 982 (La.App. 1st Cir.1983).
Lt. LeBlanc and Sgt. Toups initially went to the defendant’s residence for the purpose of bringing him to the police station for questioning, not to arrest the defendant. A grave offense, the crime of murder, which was a violent offense was involved. The officers knew the results of the ballistics tests and that Michael Miller, an eye witness, had given a statement that the defendant had committed the murder when they approached the defendant’s residence. The officers knew the defendant lived there and that guns were kept there. When the two officers knocked on the door, the defendant voluntarily opened the door and simultaneously told them that he knew why they were there, that “Buckwheat” should not have been messing with him, and that “Buckwheat” deserved what he got. At this point in time, the officers had strong probable cause to arrest defendant for murder and they were faced with exigent circumstances sufficient to justify a warrantless arrest. A violent crime, murder, had been committed and the defendant then knew the police suspected him. The arresting officers had reasonably trustworthy information, together with the defendant’s spontaneous statement, to believe the defendant had committed the murder. The arresting officers knew that there was a likelihood that defendant would escape since the defendant had only lived in the Abbeville area for less than one month. The high risk that defendant would escape if not apprehended made it impractical for the officers to obtain a warrant before arresting defendant. State v. Cormier, 438 So.2d 1269 (La.App. 3rd Cir.1983). Further, the officers then entered the defendant’s house peaceably with his consent. A warrantless arrest must be based on the arresting officer’s reasonable belief that the person to be arrested had committed an offense. Given the totality of these circumstances, there was probable cause for the officers to make a warrantless arrest of the defendant. The subsequent oral in-culpatory statements made by the defendant are admissible as there was a lawful warrantless arrest. Under the circumstances of this case it cannot be said that the defendant’s constitutional rights were violated. This assignment of error is without merit.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs. For the reasons which I have advanced many times heretofore. We should not have to follow Jackson v. Virginia.

. See State v. Johnson, 426 So.2d 95 (La. 1983), which stated that proof of the requisite element of second degree murder, i.e., specific intent, was proven by testimony that the defendant fired four shots as the victim lay defenseless on the ground.

. See, State v. Robinson, 384 So.2d 332 (La. 1980), which held that voluntary and spontaneous statements are admissible even though Miranda warnings have not been given.